**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Darnell Smith, et al., | |
| Plaintiffs, | No. 1:15-cv-03467 |
| v. | Honorable Amy J. St. Eve |
| The City of Chicago; a municipal corporation, et al., | |
| Defendants. | |

**DEFENDANT THOMAS LAURIN'S ANSWER AND AFFIRMATIVE
DEFENSES TO FIFTH AMENDED COMPLAINT AT LAW**

Defendant Thomas Laurin, a police officer with the Chicago Police Department ("Officer Laurin"), by and through his undersigned counsel, for his Answer to the Fifth Amended Complaint states as follows:

**PRELIMINARY STATEMENT**

1.     This is a civil rights action in which named Plaintiffs, on behalf of themselves and a class of similarly situated individuals, seek relief for Defendants' violation of their rights, privileges, and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of Illinois.

**ANSWER:**     Officer Laurin admits Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of Illinois, but denies violating any law or statute.

2.     The Defendants in this action, the CITY OF CHICAGO ("City"), Chicago Police Superintendent GARRY McCARTHY ("McCARTHY"), and Defendant Chicago Police Department officers, including JOHN DOE OFFICERS 1-44 and other undetermined officers, ANTHONY GEMIGNANI #14437, MICHAEL CALLAHAN #15700, ROY MAZZANTI #18903, ADOLFO GARCIA #14438, KRIS STIPANOV #9128, MARIO CRUZ #16659, NICHOLAS CORDOVA #11155, THOMAS LAURIN #15916, PATRICK KELLY #19397, and DANIEL SCHMIT #6900, have implemented and are continuing to enforce, encourage and sanction a policy, practice and/or custom of unconstitutional stops and frisks of City residents,

including Plaintiffs, by the Chicago Police Department ("CPD") which are being done without the reasonable articulable suspicion required under the Fourth Amendment.

**ANSWER:** Officer Laurin denies the allegations contained in Paragraph 2 as directed against him. Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 2.

3. In addition, this pattern and practice of unconstitutional stops and frisks by CPD officers often have used, and continue to use, race and/or national origin, not reasonable suspicion, as the determinative factors in deciding to stop and frisk individuals in violation of the Equal Protection Clause of the Fourteenth Amendment. The victims of such racial and/or national origin profiling are principally African-American and Hispanic males.

**ANSWER:** Officer Laurin denies the allegations contained in Paragraph 3 as directed against him. Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 3.

4. The CPD's widespread constitutional abuses have flourished as a result of, and are directly and proximately caused by, policies, practices and/or customs devised, implemented and enforced by the City and its final policymakers, including Superintendent McCarthy. The City and Superintendent McCarthy have acted with deliberate indifference to the constitutional rights of those who would come into contact with CPD officers by: (a) failing to properly screen, train, and supervise CPD officers; (b) inadequately monitoring CPD officers and their stop and frisk practices; (c) failing to sufficiently discipline CPD officers who engage in constitutional abuses; and (d) encouraging, sanctioning and failing to rectify the CPD's unconstitutional practices.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4.

5. As a direct and proximate result of Defendants' policies, practices and/or customs, hundreds of thousands of City residents, in particular African-American and Hispanic individuals have been subjected to unconstitutional stops and frisks by CPD officers. Indeed, many African-American and Hispanic persons repeatedly have been victims of suspicionless stops and frisks by the CPD. Moreover, the CPD's constitutional abuses have included unlawful searches and seizures and, at times, excessive force, of which the fatal shooting of Freddie

Wilson is but one tragic example. *See Private Bank & Trust Co. v. The City of Chicago*, No. 08-L-012698 (Ill. Cir. Ct.).

**ANSWER:** Officer Laurin denies the allegations contained in Paragraph 5 as directed against him. Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 5.

6. The named Plaintiffs seek to represent a certified class for the purpose of obtaining declaratory, injunctive and compensatory relief. The named Plaintiffs seek a class-wide judgment declaring that the policies, practices and/or customs described herein violate the Fourth and Fourteenth Amendments and a class-wide injunction enjoining Defendants from continuing such policies, practices and/or customs. In addition, the named Plaintiffs seek an award of compensatory and punitive damages on their own behalf and on behalf of the class. All Plaintiffs seek an award of attorneys' fees and costs and such other relief as this Court deems equitable and just.

**ANSWER:** Officer Laurin admits Plaintiffs seek to represent a certified class and seek a class-wide judgment, as well as declaratory and injunctive relief, compensatory damages, punitive damages, and attorneys' fees and costs. Officer Laurin denies that any class should be certified and further denies any wrongdoing or liability Plaintiffs allege.

## JURISDICTION

7. Jurisdiction is conferred upon this Court under 28 U.S.C. §§ 1331 and 1343(3) and (4), as this action seeks redress for the violation of Plaintiffs' constitutional and civil rights under 42 U.S.C. § 1983 and 42 U.S.C. § 2000(d).

**ANSWER:** Officer Laurin admits jurisdiction is proper, but Officer Laurin denies he violated any law or statute.

8. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

**ANSWER:** Officer Laurin denies that he violated any law or statute and further denies that Plaintiffs are entitled to any relief.

3

9.     Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

**ANSWER:**     Officer Laurin admits that supplemental jurisdiction exists under 28 U.S.C. § 1367(a), but Officer Laurin denies he violated any law or statute.

## VENUE

10.     Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§ 1391 (b) and (c) because all of the relevant events occurred within this judicial district and, upon information and belief, all parties to this action reside within this judicial district.

**ANSWER:**     Officer Laurin admits that venue is proper, but Officer Laurin denies he violated any law or statute and denies Plaintiffs are entitled to any relief.

## JURY DEMAND

11.     Plaintiffs demand trial by jury in this action on each and every one of their claims.

**ANSWER:**     Officer Laurin admits Plaintiffs demand a trial by jury, but Officer Laurin denies he violated any law or statute and denies Plaintiffs are entitled to any relief.

## PARTIES

**A.     Plaintiffs**

12.     Plaintiff DARNELL SMITH ("SMITH") is a 37-year-old African-American man who resides in the Englewood neighborhood of the City of Chicago. Plaintiff SMITH resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12.

4

13.     Plaintiff DARREN NATHAN ("NATHAN") is a 49-year-old African-American man who resides in the Englewood neighborhood of the City of Chicago. Plaintiff NATHAN resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13.

14.     Plaintiff GREGORY DAVIS ("DAVIS") is a 58-year-old African-American man who resides in the Woodlawn neighborhood of the City of Chicago. Plaintiff DAVIS resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14.

15.     Plaintiff MARK NEVILLES ("NEVILLES") is a 41-year-old man who resides in a South Side neighborhood of the City of Chicago. Plaintiff NEVILLES resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15.

16.     Plaintiff HERBER DYER, JR. ("DYER") is a 66-year-old African-American man who resides in the Roseland neighborhood of the City of Chicago. Plaintiff DYER resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16.

17.     Plaintiff ARACELI FANTANEZ is the mother of HECTOR FANTANEZ ("FANTANEZ"), a 12-year-old Hispanic boy who resides in the Little Village neighborhood of the City of Chicago. Plaintiffs ARACELI FANTANEZ and HECTOR FANTANEZ reside in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

5

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 17.

18. Plaintiff MARCELL DAVIS ("DAVIS") is a 33-year-old African-American man who resides in the Woodlawn neighborhood of the City of Chicago. Plaintiff DAVIS resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 18.

19. Plaintiff ANTHONY POLK ("POLK") is a 65-year-old African-American man who resides in a West Side neighborhood of the City of Chicago. Plaintiff POLK resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 19.

20. Plaintiff CALVIN JACKSON ("JACKSON") is a 55-year-old African-American man who resides in the Englewood neighborhood of the City of Chicago. Plaintiff JACKSON resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 20.

21. Plaintiff CARL McCORD ("McCORD") is a 52-year-old African-American man who resides in a western suburb of the City of Chicago. Plaintiff McCORD visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 21.

22.     Plaintiff TIMOTHY THIGPEN ("THIGPEN") is a 52-year-old African-American man who resides in South Austin neighborhood of the City of Chicago. Plaintiff THIGPEN resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22.


23.     Plaintiff MELVIN THOMPSON ("THOMPSON") is a 46-year-old African-American man who resides in Washington Park neighborhood of the City of Chicago. Plaintiff THOMPSON resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23.


24.     Plaintiff REBECCA SANDERS is the mother of STEVE McABEE ("McABEE"), a 16-year-old African-American boy who resides in the Englewood neighborhood of the City of Chicago. Plaintiffs REBECCA SANDERS and STEVE McABEE reside in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24.


25.     Plaintiff ARTHUR MOTON ("MOTON") is a 49-year-old African-American man who resides in the West Pullman neighborhood of the City of Chicago. Plaintiff MOTON resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25.


26.     Plaintiff EDGAR MARSHALL, JR. ("MARSHALL") is an African-American man who resides in a West Side neighborhood of the City of Chicago. Plaintiff MARSHALL resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

7

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26.

27. Plaintiff MICHAEL SANDERS ("SANDERS") is a 40-year-old African-American man who resides in the Englewood neighborhood of the City of Chicago. Plaintiff SANDERS resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27.

28. Plaintiff RASHAWN LINDSEY ("LINDSEY") is a 21-year-old African-American man who resides in the Englewood neighborhood of the City of Chicago. Plaintiff LINDSEY resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28.

29. Plaintiff SHANTAY JOHNSON ("JOHNSON") is a 24-year-old African-American woman who resides in Chicago, Illinois. Plaintiff JOHNSON resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29.

30. Plaintiff SIDNEY BELL ("BELL") is a 54-year-old African-American man who resides in a West Side neighborhood of the City of Chicago. Plaintiff BELL resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30.

B.     **Defendants**

31.     Defendant CITY OF CHICAGO ("City") is a municipal entity created and authorized under the laws of the State of Illinois. It is authorized under the laws of the State of Illinois to maintain a police department, the CPD, which acts as the City's agent in the area of law enforcement and for which the City is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers. The CPD's operations include the operations as described herein. On information and belief, the law enforcement activities of the CPD are funded, in part, with funds from the federal government.

**ANSWER:**     Officer Laurin admits the City is a municipal entity created and authorized

under the laws of the State of Illinois.  Officer Laurin admits under the laws of the State of

Illinois the City is authorized to maintain a police department.  Officer Laurin lacks knowledge

or information sufficient to form a belief as to the truth of the allegations that the law

enforcement activities of the CPD are funded, in part, with funds from the federal government.

The remaining allegations contained in Paragraph 31 constitute legal conclusions to which no

answer is required.  To the extent an answer may be required, Officer Laurin lacks knowledge or

information sufficient to form a belief as to the truth of the remainder of the allegations

contained in Paragraph 31.


32.     Defendant Chicago Police Superintendent GARRY McCARTHY is and was, at all times relevant herein, the Police Superintendent for the City, and is and was responsible for, and the chief architect of, the policies, practices and/or customs of the CPD, a municipal agency of the City. He is and was, at all times relevant herein, responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the police officers under his command who are or were employed by the CPD, including the Defendants named herein. He is sued in his individual capacity.

**ANSWER:**     Officer Laurin admits Superintendent McCarthy was the Superintendent of

the Chicago Police Department during the period of May 20, 2011 through December 1, 2015,

and admits that Superintendent McCarthy is sued in his individual capacity.  The remaining

allegations contained in Paragraph 32 constitute legal conclusions to which no answer is

required.  To the extent an answer may be required, Officer Laurin lacks knowledge or

9

information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 32.

33.    Defendants ANTHONY GEMIGNANI, MICHAEL CALLAHAN, ROY MAZZANTI, ADOLFO GARCIA, KRIS STIPANOV, MARIO CRUZ, NICHOLAS CORDOVA, THOMAS LAURIN, PATRICK KELLY, and DANIEL SCHMIT are, and/or were, at all times relevant herein, officers, employees, and agents of the CPD, a municipal agency of the City. Defendant Officers are sued in their individual capacities.

**ANSWER:**    Officer Laurin admits that Defendants Anthony Gemignani, Michael Callahan, Roy Mazzanti, Adolfo Garcia, Kris Stipanov, Mario Cruz, Nicholas Cordova, Thomas Laurin, Patrick Kelly, and Daniel Schmit are sued in their individual capacities.  Officer Laurin further admits that he was an employee of CPD during the relevant times herein.  Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 33.

34.    Defendants JOHN DOE OFFICERS 1-44 are, and/or were, at all times relevant herein, officers, employees, and agents of the CPD, a municipal agency of the City. Defendants JOHN DOE OFFICERS 1-44 are sued in their individual capacities.

**ANSWER:**    Officer Laurin admits that Defendant John Doe Officers 1 through 44 are sued in their individual capacities.  Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 34.

35.    Undetermined Defendant Chicago Police Officers whose actions against class members violated their Fourth and Fourteenth Amendment rights.  At all times relevant herein, these undetermined Defendant CPD Officers were officers, employees, and agents of the CPD, a municipal agency of the City.  These Defendants are being sued in their individual capacities for their actions against class members.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35.

10

36. At all times relevant herein, Defendants Superintendent McCARTHY and other CITY OF CHICAGO policymakers have acted under color of state law in the course and scope of their duties and functions as agents, employees, and officers of the City and/or the CPD in engaging in the conduct described herein. At all times relevant herein, Defendants have acted for and on behalf of the City and/or the CPD with the power and authority vested in them as officers, agents and employees of the City and/or the CPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the City and/or the CPD.

**ANSWER:** Officer Laurin admits that he acted for or on behalf of the City and/or the

CPD as an officer, employee, and agent. The remaining allegations contained in Paragraph 36

constitute legal conclusions to which no answer is required. To the extent that an answer is

required, Officer Laurin denies that he engaged in the conduct described herein to the extent such

alleged conduct is alleged to be a violation of any law or statute. Officer Laurin lacks knowledge

or information sufficient to form a belief as to the truth of the remainder of the allegations

contained in Paragraph 36.

37. At all times relevant herein, Defendants JOHN DOE OFFICERS 1-44, Superintendent McCARTHY and other CITY OF CHICAGO policymakers, and other undetermined Chicago Police Officers have violated clearly established constitutional standards under the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment of which a reasonable person would have known.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 37.

**CLASS ACTION ALLEGATIONS**

38. Pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, the named Plaintiffs seek to represent a certified Plaintiff class consisting of all persons who have been or will be subjected by CPD officers to Defendants' policy, practice and/or custom of stopping or stopping and frisking persons in the absence of a reasonable, articulable suspicion that criminal activity is taking place, in violation of the Fourth Amendment, including persons stopped or stopped and frisked based on race and/or national origin, in violation of the Equal Protection Clause of the Fourteenth Amendment.

**ANSWER:**    Officer Laurin admits Plaintiffs seek to represent a certified Plaintiff class pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), but denies that class certification is appropriate and denies violating any law or statute.

39.    The members of the class are so numerous as to render joinder impracticable. Based on information made publicly available by the CPD, and recently publicized by the American Civil Liberties Union (ACLU) of Illinois, hundreds of thousands of people are stopped or stopped and frisked each year by the CPD without reasonable, articulable suspicion of criminal conduct.

**ANSWER:**    Officer Laurin denies the allegations contained in Paragraph 39.

40.    In addition, joinder is impracticable because, upon information and belief, many members of the class are not aware of the fact that their constitutional rights have been violated and that they have the right to seek redress in court. Many members of the class are without the means to retain an attorney to represent them in an individual civil rights lawsuit. Given the time, money and resources required to pursue a lawsuit, many attorneys are hesitant to do so in cases involving unconstitutional stop and frisks because of concerns that costs will exceed any potential recovery for the plaintiff(s). Moreover, many class members who have been victimized by the CPD's unconstitutional practices do not bring individual claims for fear of retaliation and reprisals by CPD officers. Accordingly, there is no appropriate avenue for the protection of the class members' constitutional rights other than a class action.

**ANSWER:**    Officer Laurin denies the allegations contained in Paragraph 40.

41.    The class members share a number of questions of law and fact in common, including, but not limited to:

> a.    whether the CPD engages in a policy, practice and/or custom of stopping and frisking members of the class in the absence of reasonable, articulable suspicion of criminal conduct required by the Fourth Amendment;
>
> b.    whether the CPD engages in profiling on the basis of race and/or national origin in targeting class members for such stops and frisks in violation of the Equal Protection Clause of the Fourteenth Amendment;
>
> c.    whether the CPD, incidental to such stops and frisks, conducts searches and seizures and uses excessive force in violation of the Fourth Amendment;

d.      whether the City, Superintendent McCARTHY, and other City policymakers have failed to adequately and properly screen, train, supervise, monitor and discipline CPD officers, and whether those failures have caused the constitutional violations inflicted by CPD officers against class members; and

e.      whether the City, Superintendent McCARTHY and other City policymakers have encouraged, sanctioned and failed to rectify unconstitutional stops and frisks by members of the CPD, and whether such acts and omissions have caused constitutional violations by CPD officers against class members.

**ANSWER:**      Officer Laurin denies each of the allegations contained in Paragraph 41.

42.      The named Plaintiffs' claims are typical of those of the class. Like the other members of the class, the named Plaintiffs have been and likely will be again victims of the CPD's policy, practice and/or custom of suspicionless stops and frisks in that they have been and likely will continue to be, stopped or stopped and frisked with the reasonable articulable suspicion of criminal conduct required under the Fourth Amendment and on the basis of their race and/or national origin.

**ANSWER:**      Officer Laurin denies the allegations contained in Paragraph 42.

43.      The legal theories under which the named Plaintiffs seek relief are the same or similar to those on which all members of the class will rely, and the harms suffered by the named Plaintiffs are typical of the harms suffered by the class members.

**ANSWER:**      Officer Laurin denies the allegations contained in Paragraph 43.

44.      The named Plaintiffs have a strong personal interest in the outcome of this action, have no conflicts of interest with members of the Plaintiff class, are willing and able to fairly and vigorously represent the members of the proposed class as they pursue their similar individual claims in this action. The named Plaintiffs are all African-American or Hispanic men and reside in and/or visit neighborhoods where CPD officers have been deployed and conduct stop and frisks. As long as the CPD engages in its policy, practice and/or custom of suspicionless stops and frisks, the named Plaintiffs are, and will remain, at high risk of being illegally stopped and frisked again by the CPD. Indeed, many of the named Plaintiffs have been victimized by CPD officers repeatedly.

**ANSWER:**      Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44.

13

45.     The named Plaintiffs are represented by Romanucci & Blandin, LLC, Center for Constitutional Litigation, PC, the Gregory Law Firm, and Hart McLaughlin & Eldridge, LLC. All are experienced civil rights counsel who have litigated class action lawsuits and/or have extensive experience handling civil rights cases in federal court. Counsels for the Plaintiffs have the resources, expertise and experience to prosecute this action. Counsels for the Plaintiffs know of no conflicts among members of the class or between the attorneys and members of the class.

**ANSWER:**     Officer Laurin admits the named Plaintiffs are represented by Romanucci & Blandin, LLC, Center for Constitutional Litigation, PC, the Gregory Law Firm, and Hart McLaughlin & Eldridge, LLC.  Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 45.

46.     The Plaintiff class should be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the Defendants have acted on grounds generally applicable to the class, thereby making class-wide declaratory and injunctive relief appropriate.

**ANSWER:**     Officer Laurin denies the allegations contained in Paragraph 46.

47.     The Plaintiff class should also be certified under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  The common issues of fact and law affecting the claims of the named Plaintiffs and members of the proposed class, including, but not limited to, the common issues discussed above, predominate over any issues affecting only individual claims.  Additionally, a class action is superior to other available means for the fair and efficient adjudication of the claims of the named Plaintiffs and members of the proposed class.  Finally, the cost of proving the CPD's policy, practice and/or custom of suspicionless stops and frisks on the basis of race and/or national origin makes it impracticable for the named Plaintiffs and members of the proposed class to pursue their claims individually.

**ANSWER:**     Officer Laurin denies the allegations contained in Paragraph 47.

## STATEMENT OF FACTS

**A.     The Experiences of the Named Plaintiffs**

**    i.     Darnell Smith and Darren Nathan**

48.     Plaintiff DARNELL SMITH is a 37-year-old African-American man who resides in the Englewood neighborhood of the City of Chicago. Plaintiff SMITH resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

14

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 48.

49. Plaintiff DARREN NATHAN is a 49-year-old African-American man who resides in the Englewood neighborhood of the City of Chicago. Plaintiff NATHAN resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49.

50. On or about May 3, 2013, around 11:00 A.M., Plaintiffs DARNELL SMITH and DARREN NATHAN were visiting neighbors at or near the 6000 block of S. Paulina St. in Chicago, Illinois.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 50.

51. SMITH and NATHAN were speaking to a group of several friends on the front porch steps.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 51.

52. Without basis to formulate a reasonable articulable suspicion that SMITH, NATHAN, or anyone in the group had engaged in or was about to engage in criminal conduct, Defendant Officers, JOHN DOE OFFICERS 1 and 2, pulled up in an SUV and approached the group.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52.

53. Defendant Officers questioned Plaintiffs asking them if they had any weapons on them. The Plaintiffs responded in the negative.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53.

54.    Without consent and with no reasonable belief that NATHAN was armed or dangerous, JOHN DOE OFFICER 1 ordered NATHAN to put his hands up and began to pat NATHAN down and search his pockets and jacket.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 54.

55.    JOHN DOE OFFICER 1 took NATHAN's wallet out of his pocket and pulled out NATHAN's ID.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55.

56.    NATHAN told JOHN DOE OFFICER 1 "you know you ran through my wallet for no reason and searched me without probable cause."

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56.

57.    After finding no illegal contraband or weapons, JOHN DOE OFFICER 1 instructed NATHAN to go home.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 57.

58.    At the same time, JOHN DOE OFFICER 2 had approached SMITH.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 58.

16

59.     JOHN DOE OFFICER 2 had told SMITH and NATHAN that the officers "just wanted to make sure they weren't armed."

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59.

60.     SMITH responded, "What makes you think I'm armed?"

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 60.

61.     JOHN DOE OFFICER 2 searched through all of SMITH's pockets and only found a phone charger. JOHN DOE OFFICER 2 stated, "Oh, you're not armed. We OK, right?"

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 61.

62.     Plaintiff SMITH asked for the Defendant Officers' badge numbers but they refused to give them to Plaintiff.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 62.

63.     JOHN DOE OFFICERS 1 and 2 returned to their police SUV and drove away.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63.

64.     Plaintiffs SMITH and NATHAN did not see the Defendant Officers fill out a contact card or form.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 64.

65.     These officers subjected SMITH and NATHAN to a suspicionless stop based on their race and/or national origin.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 65.

66.     In a separate incident, on October 9, 2014, at around 10:00 P.M., Plaintiff SMITH was standing outside his and his grandparents' building, located at 6612 S. Paulina Street in Chicago, Illinois. SMITH was waiting for the food delivery man to deliver his food.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 66.

67.     SMITH saw Officers ANTHONY GEMIGNANI and MICHAEL CALLAHAN driving down the one-way street traveling south. Defendant Officers then turned down the opposite side of the street than SMITH.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 67.

68.     Without basis to formulate a reasonable articulable suspicion that SMITH had engaged in or was about to engage in criminal conduct, Officers GEMIGNANI and CALLAHAN exited their unmarked car, asked Plaintiff SMITH why he was standing there, and whether he had any weapons. Plaintiff SMITH responded that he did not have any weapons and that his grandmother, who was watching the incident from a window, lived in the building behind them.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 68.

69.     Officers GEMIGNANI and CALLAHAN asked SMITH to step over to their car with them and SMITH refused the invitation.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 69.

70.     With no reasonable belief that Smith was armed or dangerous, Defendant Officers patted SMITH down and put their hands in SMITH's pockets and removed all of his belongings, including his wallet and identification. They threw SMITH's wallet on the floor.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 70.

71.     One of the Defendant Officers ran Plaintiff's identification on the police radio.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 71.

72.     Plaintiff did not see Defendant Officers fill out a contact card or form.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 72.

73.     After failing to find anything incriminating, the Defendant Officers left and did not issue SMITH any citations.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 73.

74.     Officers GEMIGNANI and CALLAHAN subjected Smith to a suspicionless stop and search based on his race and/or national origin.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 74.

75.     In a separate incident, on June 28, 2015, at around 6:30 p.m., without basis to formulate a reasonable articulable suspicion JOHN DOE OFFICERS 3 and 4 stopped Plaintiff SMITH.

19

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 75.

76. Plaintiff SMITH asked the officers why he was being stopped and if Plaintiff SMITH was free to leave.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 76.

77. JOHN DOE OFFICERS 3 and 4 told Plaintiff SMITH that Plaintiff SMITH was not free to leave and that SMITH was being detained for a possible narcotics violation.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 77.

78. Plaintiff SMITH told JOHN DOE OFFICERS 3 and 4 that he did not consent to any search and told JOHN DOE OFFICERS 3 and 4 not to put their hands on SMITH. SMITH told JOHN DOE OFFICERS 3 and 4 that SMITH does not sell, use or possess any narcotics and that SMITH wanted a supervisor to be present.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 78.

79. JOHN DOE OFFICERS 3 and 4 threatened to take Plaintiff SMITH to jail for "not cooperating."

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 79.

80. JOHN DOE OFFICER 3 performed a name check of Plaintiff SMITH.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 80.

81.    Plaintiff SMITH did not see JOHN DOE OFFICERS 3 and 4 fill out a contact card or form.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 81.

82.    After failing to find anything incriminating, JOHN DOE OFFICERS 3 and 4 left and did not issue Plaintiff SMITH any citations.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 82.

83.    These officers subjected Plaintiff SMITH to a suspicionless stop based on his race and/or national origin.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 83.

### ii.    Gregory Davis

84.    Plaintiff GREGORY DAVIS is a 58-year-old African-American man who resides in the Woodlawn neighborhood of the City of Chicago. Plaintiff DAVIS resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 84.

85.    In July 2014, Plaintiff DAVIS was in his vehicle outside a Chase Bank located at 6650 S. Stony Island Avenue while he waited for his daughter's mother to come out of a Walgreen's store.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 85.

21

86.     Without basis to formulate a reasonable articulable suspicion that DAVIS had engaged in or was about to engage in criminal conduct, JOHN DOE OFFICERS 5 and 6 pulled DAVIS over and positioned themselves on both sides of DAVIS's vehicle.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 86.

87.     Defendant Officers asked DAVIS why he was sitting there and demanded DAVIS's driver's license and insurance information.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 87.

88.     The Defendant Officers looked through the window into DAVIS's vehicle before allowing Plaintiff DAVIS to return to his nearby home.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 88.

89.     Defendant Officers did not issue any citations. Plaintiff DAVIS did not see Defendant Officers fill out a contact card or form.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 89.

90.     JOHN DOE OFFICERS 5 and 6 subjected DAVIS to a suspicionless stop based on his race and/or national origin.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 90.

91.     In a separate incident in October 2014, Plaintiff DAVIS pulled out of his parking space near his home and made a left turn into an alley. Plaintiff DAVIS believed that another vehicle was coming through the alley so he briefly stopped in the alley.

22

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 91.

92.     Without any basis to formulate a reasonable articulable suspicion that DAVIS had engaged in or was about to engage in criminal conduct, JOHN DOE OFFICERS 7 and 8 and [sic] then put their lights on and pulled Plaintiff DAVIS over. Defendant Officers asked DAVIS for his license and registration.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 92.

93.     The Defendant Officers asked DAVIS what he had in the car and asked to search DAVIS's car. Plaintiff DAVIS denied the Defendant Officers' request to search the car because they had no probable cause.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 93.

94.     Defendant Officers took Plaintiff DAVIS's driver's license and insurance information and forced DAVIS to wait 20 minutes while they searched his background information.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 94.

95.     Defendant Officers then told DAVIS he was free to go. DAVIS did not see Defendant Officers fill out a contact card or form.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 95.

96.     These officers subjected DAVIS to a suspicionless stop based on his race and/or national origin.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 96.

### iii. Herbert Dyer, Jr.

97. HERBER DYER, JR. is a 66-year-old African-American man who resides in the Roseland neighborhood of the City of Chicago. Plaintiff DYER resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 97.

98. In August 2014, Plaintiff DYER was walking near the corner of N. Central Avenue and Race Avenue in Chicago, Illinois on his way to the grocery store. He was waiting for the light to change so he could cross the street.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 98.

99. Plaintiff DYER is a retired litigation paralegal and former tutor at Roosevelt University's "Life Skills and Re-Entry Program" for ex-offenders.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 99.

100. Without any basis to formulate a reasonable, articulable suspicion that DYER had engaged in or was about to engage in a crime, JOHN DOE OFFICERS 9, 10, 11, 12, and 13 sped through the intersection against the light in their unmarked car and pulled up on to the sidewalk in front of Plaintiff DYER. JOHN DOE OFFICER 9 was African-American. The other four officers were white.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 100.

101.     Defendant Officers flung open all four doors of their car and shouted at Plaintiff DYER to show his hands. Two of the Defendant Officers ran towards Plaintiff DYER, while the other three stayed by the car.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 101.

102.     One of the Defendant Officers grabbed DYER and pushed him face-first up against the unmarked police car.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 102.

103.     With no reasonable suspicion that DYER was armed or dangerous, Defendant Officers made DYER place his hands on the unmarked police car and began to frisk him. Defendant Officers also went through DYER's pockets, throwing the contents on the ground.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 103.

104.     One of the Defendant Officers took DYER's wallet and ran his license on the police computer in his unmarked police car.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 104.

105.     Upon information and belief, Defendant Officers repeatedly cursed at Plaintiff Dyer. One Defendant Officer said, "What are you doin' out here, old man? Slingin' that shit, huh?"

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 105.

106.     Upon information and belief, one Defendant Officer said, "Yeah, he's after that product."

25

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 106.

107.    Defendant Officers ordered DYER not to move and to be quiet. Upon information and belief, one Defendant Officer said, "Shut your fuckin' mouth old man, or we'll run you in just for the hell of it."

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 107.

108.    Plaintiff DYER began demanding to know from the Defendant Officers what he had done wrong.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 108.

109.    JOHN DOE OFFICER 9 told DYER to stay up against the car. Upon information and belief, Plaintiff DYER looked the African-American officer, JOHN DOE OFFICER 9, in the eye and said, "You of all people should know better than this. I could be your father, your uncle. Why are you doing this?"

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 109.

110.    In response, JOHN DOE OFFICER 9 and the other Defendant Officers handcuffed Plaintiff DYER.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 110.

111.    While Defendant Officers were frisking DYER and waiting for the results of DYER's background and/or license plate check, they continued to accuse DYER of selling drugs. Upon information and belief, some Defendant Officers also told DYER he was too old to be selling drugs.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 111.

112. Defendant Officers asked Plaintiff DYER if he had a job, and DYER responded that he did. Upon information and belief, one of the Defendant Officers sarcastically asked DYER, "Oh yeah? And what kind of work do you do?"

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 112.

113. Plaintiff DYER told Defendant Officers that he was a retired litigation paralegal and college tutor. DYER also told Defendant Officers that he knew his rights and what they were doing was unconstitutional.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 113.

114. After Plaintiff DYER explained to the officers that what they were doing was unconstitutional, Defendant Officers took the handcuffs off of DYER and gave him back his wallet.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 114.

115. Without saying another word to DYER, Defendant Officers got back into their unmarked car and drove off. No citations were issued.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 115.

116. Upon information and belief, the entire stop and frisk incident took about forty-five minutes.

27

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 116.

117. Defendant Officers subjected DYER to a suspicionless stop, frisk, and unlawful search based on his race and/or national origin.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 117.

118. In a separate incident in late February 2015, Plaintiff was leaving the Hilltop Liquor Store at the corner of 103rd Street and S. Michigan Avenue in Chicago, Illinois. The store is about a block north of DYER's home.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 118.

119. Without any basis to formulate a reasonable, articulable suspicion that DYER had engaged in or was about to engage in a crime, JOHN DOE OFFICERS 14 and 15 who were in plain clothes suddenly stopped in front of DYER on the corner of 103rd and S. Michigan Avenue. Both Defendant Officers were white.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 119.

120. With no reasonable suspicion that DYER was armed or dangerous, Defendant Officers made DYER place his hands on the unmarked police car and began to frisk him. Defendant Officers also went through DYER's pockets.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 120.

121. During the search, DYER's cell phone fell out of his pocket and the battery popped out.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 121.

122. When DYER reached down to pick the phone up, JOHN DOE OFFICER 14 grabbed Plaintiff DYER and pushed his head forward into the car.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 122.

123. Upon information and belief, JOHN DOE OFFICER 14 whispered into Plaintiff DYER's ear, "Don't you move, nigger, or I'll blow your fuckin' head off."

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 123.

124. Unlike his previous stop, Plaintiff Dyer did not assert that he knew his rights to these Defendant Officers out of fear that it could escalate the situation and he could be harmed.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 124.

125. JOHN DOE OFFICER 15 ran Plaintiff DYER's license through the police computer system in his car.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 125.

126. After it was revealed that DYER had no outstanding warrants or holds, he was let go without being arrested or issued a citation.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 126.

29

127.    As Defendant Officers drove off, they ran over Plaintiff DYER's cellphone, which was still lying in the parking lot where Defendant Officers had cast it.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 127.

128.    Upon information and belief, the incident lasted about twenty minutes.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 128.

129.    Defendant Officers subjected DYER to a suspicionless stop, frisk, and unlawful search based on his race and/or national origin.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 129.

### iv.    Mark Nevilles

130.    Plaintiff MARK NEVILLES is a 41-year-old man who resides in a South Side neighborhood of the City of Chicago. Plaintiff NEVILLES resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 130.

131.    On April 1, 2015, Plaintiff NEVILLES was walking alone near the corner of 79th and Drexel in Chicago, Illinois on his way to a local store.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 131.

132.    Without basis to formulate a reasonable, articulable suspicion that NEVILLES had engaged in or was about to engage in criminal conduct, JOHN DOE OFFICERS 16 and 17 stopped NEVILLES and told him to put his hands on their police car.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 132.

133.    Defendant Officers frisked NEVILLES and searched inside his pockets and bags.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 133.

134.    After finding no weapons or illegal contraband, Defendant Officers let Plaintiff go and did not issue any citations.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 134.

135.    JOHN DOE OFFICERS 16 and 17 subjected NEVILLES to a suspicionless stop, frisk, and illegal search based on his race and/or national origin.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 135.

**v.    Hector Fantanez**

136.    Plaintiff HECTOR FANTANEZ is a 12-year-old Hispanic boy who resides in the Little Village neighborhood of the City of Chicago. Plaintiff FANTANEZ resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 136.

137.    On April 3, 2015, during the day, FANTANEZ was riding his bike by his father's house near the intersection of 24th Street and Spalding Avenue in Chicago, Illinois.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 137.

138.    Without any basis to formulate a reasonable, articulable suspicion that FANTANEZ had engaged in or was about to engage in criminal conduct, JOHN DOE OFFICER 18 grabbed FANTANEZ by the arm while FANTANEZ was still on his bike. Defendant Officer then took FANTANEZ over to a fence.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 138.


139.    When FANTANEZ told the Defendant Officer that he was only 12 years old, the officer responded, "That's old enough to gangbang." FANTANEZ was then placed in the back of the police car.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 139.


140.    Without any reasonable suspicion that FANTANEZ was armed or dangerous, Defendant Officer handcuffed the 12 year old boy and searched his pockets.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 140.


141.    Plaintiff FANTANEZ's father, also named Hector Fantanez, and his father's friend David Gutierrez saw what was happening and came outside. When another officer arrived on the scene, David Gutierrez verbally protested the treatment of FANTANEZ.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 141.


142.    For protesting the Chicago police officers' conduct, David Gutierrez was eventually handcuffed and placed in the backseat of the police car with FANTANEZ.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 142.

143.     FANTANEZ had broken his wrist the year before and complained that the handcuffs were on too tightly.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 143.

144.     The police sergeant later arrived on the scene, spoke with witnesses, and FANTANEZ was let out of the back seat of the police car. No tickets or citations were issued.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 144.

145.     Chicago police officers later told FANTANEZ's family that he "fit the description" of criminal suspect.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 145.

146.     JOHN DOE OFFICER 18 subjected FANTANEZ to a suspicionless stop, frisk, and unlawful search based on his race and/or national origin.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 146.

**vi.     Marcell Davis**

147.     Plaintiff MARCELL DAVIS is a 33-year-old African-American man who resides in the Woodlawn neighborhood of the City of Chicago. Plaintiff DAVIS resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 147.

148.　In October 2014, December 2014, February 2015, and twice in March 2015, Plaintiff DAVIS was stopped and frisked while standing in front of his home in the Fuller Park neighborhood on or near S. Princeton Street in Chicago, Illinois.

**ANSWER:**　Officer Laurin admits that on March 9, 2015, Officers Laurin and Cordova conducted an investigatory stop of Marcell J. Davis at 4919 S. Princeton Avenue, Chicago Illinois 60609.　Officer Laurin lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 148.

149.　On each of these occasions, DAVIS was sitting in front of his house talking with family and friends.

**ANSWER:**　Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 149.

150.　Without any basis to formulate a reasonable articulable suspicion that DAVIS had engaged or was about to engage in criminal conduct, Officers NICHOLAS CORDOVA, THOMAS LAURIN, PATRICK KELLY, DANIEL SCHMIT, and JOHN DOE OFFICER 19, et al. repeatedly pulled up in front of DAVIS's home, sometimes with guns drawn, and stopped him.

**ANSWER:**　As to the encounter on March 9, 2015, Officer Laurin denies the allegations contained in Paragraph 150.　Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 150.

151.　With no reasonable belief that DAVIS was armed or dangerous, Defendant Officers frisked DAVIS down each time he was stopped. Defendant Officers also always went through Plaintiff DAVIS's pockets, but never found any contraband.

**ANSWER:**　Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 151.

152.　During each of these stops, no citations were issued.

34

**ANSWER:** Officer Laurin admits that during the March 9, 2015 encounter, no citation was issued to Plaintiff Davis. Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 152.

153. Upon information and belief, these incidents each lasted about twenty to thirty minutes.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 153.

154. Officers CORDOVA, LAURIN, KELLY, SCHMIT, and JOHN DOE OFFICER 19, et al. subjected DAVIS to multiple suspicionless tops, frisks, and unlawful searches based on his race and/or national origin.

**ANSWER:** Officer Laurin denies that he subjected Plaintiff Davis to multiple suspicionless stops, frisks, and unlawful searches based on his race and/or national origin. Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 154.

**vii.    Anthony Polk**

155. Plaintiff ANTHONY POLK is a 65-year-old African-American man who resides in a West Side neighborhood of the City of Chicago. Plaintiff POLK resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 155.

156. In June 2015, Plaintiff POLK was in his vehicle at the traffic light on Roosevelt Road in Chicago, Illinois. An unmarked car with two undercover police detectives pulled up next to him. Not knowing at the time that the men were police officers, POLK bowed his head as a greeting.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 156.

157.    The light turned green and POLK had crossed the intersection. Without basis to formulate a reasonable, articulable suspicion that POLK had engaged in or was about to engage in a crime, the undercover officers pulled him over.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 157.

158.    JOHN DOE OFFICERS 20 and 21 asked POLK if he had any weapons in the vehicle and POLK responded in the negative.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 158.

159.    Defendant Officers ordered POLK step out of his vehicle. When POLK asked why he was being forced to step out of his vehicle, JOHN DOE OFFICER 20 or 21 told him "I got the power to whoop your ass if I want."

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 159.

160.    POLK was handcuffed and placed in the back of the police car while Defendant Officers searched his vehicle.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 160.

161.    Failing to find anything incriminating, Defendant Officers told POLK he would not receive any citations. When Plaintiff POLK asked Defendant Officers for their names and badge numbers, they refused to provide it. The Defendant Officers advised POLK that he should just get in his car and drive away.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 161.

162. JOHN DOE OFFICERS 20 and 21 subjected POLK to a suspicionless stop and unlawful search based on his race and/or national origin.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 162.

**viii. Calvin Jackson**

163. Plaintiff CALVIN JACKSON is a 55-year-old African-American man who resides in the Englewood neighborhood of the City of Chicago. Plaintiff JACKSON resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 163.

164. In June 2013, Plaintiff JACKSON was walking with his girlfriend to the gas station at the intersection of 103rd Street and Wentworth Avenue in Chicago.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 164.

165. JACKSON was walking southbound down Wentworth on the west side of the street. Undercover Officers JOHN DOE OFFICER 22 and JOHN DOE OFFICER 23 were headed northbound in an unmarked car.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 165.

166. Without any basis to formulate a reasonable, articulable suspicion that JACKSON had engaged in or was about to engage in a crime, Defendant officers' police car drove across the

opposite lane of traffic and JOHN DOE OFFICER 22 jumped out and asked where JACKSON was going.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 166.

167.    With no reasonable belief that JACKSON was armed or dangerous, JOHN DOE OFFICER 22 frisked JACKSON and pulled his wallet out of his pants.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 167.

168.    After Defendant Officers found no weapons, drugs, or other contraband, they let JACKSON go without issuing any citations.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 168.

169.    JOHN DOE OFFICERS 22 and 23 subjected JACKSON to a suspicionless stop and frisk based on his race and/or national origin.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 169.

**ix.    Carl McCord**

170.    Plaintiff CARL McCORD is a 52-year-old African-American man who resides in a western suburb of the City of Chicago. Plaintiff McCORD visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 170.

171.    Plaintiff McCORD was improperly stopped and frisked by Chicago Police Department officers three times from November 2014 to December 2014.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 171.


172.    On the first occasion, Plaintiff McCORD was driving near the intersection of Cicero Avenue and Roosevelt Road. He was on his way to a nearby Sonic restaurant to get something to eat.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 172.


173.    Without any basis to formulate a reasonable, articulable suspicion that McCORD had engaged in or was about to engage in a crime, JOHN DOE OFFICER 24 pulled McCORD over.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 173.


174.    Defendant Officer made McCORD step out of his car. With no reasonable belief to suspect that McCORD was armed or dangerous, JOHN DOE OFFICER 24 handcuffed and frisked McCORD and searched his pockets. Defendant Officer also searched McCORD's vehicle.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 174.


175.    After Defendant Officer found no weapons or other contraband on McCORD or in his vehicle, McCORD was let go and no citations were issued.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 175.


176.    Plaintiff MCCORD asked Defendant Officer for his name and badge number, but Defendant Officer refused to provide it.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 176.

177.    Upon information and belief, the incident lasted around twenty minutes.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 177.

178.    JOHN DOE OFFICER 24 subjected McCORD to a suspicionless stop, frisk, and unlawful search based on his race and/or national origin.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 178.

179.    On the second occasion, MCCORD was driving near the intersection of Cicero Avenue and Fifth Avenue in Chicago, Illinois on his way to church.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 179.

180.    Without any basis to formulate a reasonable, articulable suspicion that McCORD had engaged in or was about to engage in a crime, JOHN DOE OFFICER 25 pulled McCORD over.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 180.

181.    Defendant Officer made McCORD exit his vehicle. With no basis to believe that McCORD was armed or dangerous, JOHN DOE OFFICER 25 frisked and then handcuffed McCORD.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 181.

40

182.     Defendant Officer then searched McCORD's car.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 182.


183.     Defendant Officer told McCORD he had pulled him over because the neighborhood was known for drug trafficking.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 183.


184.     After failing to find any contraband, JOHN DOE OFFICER 25 allowed McCORD to continue on his way to Church without receiving any citations.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 184.


185.     JOHN DOE OFFICER 25 subjected McCORD to a suspicionless stop, frisk, and unlawful search based on his race and/or national origin.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 185.


186.     On the third occasion, McCORD was driving near the intersection of S. Cicero Avenue and W. Polk St. in Chicago, heading to a friend's house.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 186.


187.     McCORD was initially trying to take a left turn at the intersection and was driving in the left lane. Because of the traffic, McCord switched to the right lane, and turned right on the street, where he was planning to take a different route. Once McCORD switched lanes and turned right, two squad cars and an unmarked police car pulled McCORD over.

41

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 187.

188. Without any basis to formulate a reasonable, articulable suspicion that McCORD had engaged in or was about to engage in a crime, JOHN DOE OFFICER 26, et al. stopped McCORD.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 188.

189. The Defendant Officers approached Plaintiff MCCORD's car on both sides. They asked McCORD for his license and proof of insurance. The Defendant Officers then ordered McCORD to step out of his car.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 189.

190. With no reasonable belief that McCORD was armed or dangerous, Defendant Officers handcuffed McCORD and made him place his head on the back of a squad car while they frisked him. Defendant Officers also searched McCORD's car.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 190.

191. When McCORD asked Defendant Officers why they were doing this to him, the Defendant Officers responded that they pulled him over because he was driving in a high drug trafficking neighborhood.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 191.

192. After failing to find any drugs, weapons, or other contraband, Defendant Officers told McCORD he was free to go and did not issue him any citations.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 192.

193.    McCORD asked Defendant Officers for their names and badge numbers, but they refused to provide it.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 193.

194.    Defendant Officers subjected McCORD to a suspicionless stop, frisk, and unlawful search based on his race and/or national origin.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 194.

**x.    Timothy Thigpen**

195.    Plaintiff TIMOTHY THIGPEN is a 52-year-old African-American man who resides in the South Austin neighborhood of the City of Chicago. Plaintiff THIGPEN resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 195.

196.    On April 15, 2015 at around 5:30 AM, Plaintiff THIGPEN was driving his car near the intersection of Washington Boulevard and Mayfield Avenue in Chicago, Illinois. Plaintiff THIGPEN works as a truck driver, and was driving to the lot where he keeps his truck parked.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 196.

43

197.    Without any basis to formulate a reasonable, articulable suspicion that THIGPEN had engaged in or was about to engage in a crime, JOHN DOE OFFICER 27 who was undercover in an unmarked police car pulled THIGPEN's car over.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 197.

198.    Defendant Officer asked THIGPEN where the drugs were and then ordered THIGPEN to get out of his car.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 198.

199.    With no reasonable suspicion that THIGPEN was armed or dangerous, JOHN DOE OFFICER 27 patted THIGPEN down and frisked him. Defendant Officer went through THIGPEN's pockets and also searched his car.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 199.

200.    After failing to find any contraband or weapons, Defendant Officer let THIGPEN go without issuing any citations.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 200.

201.    Upon information and belief, the incident lasted around twenty minutes.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 201.

202.    Defendant Officer subjected THIGPEN to a suspicionless stop, frisk, and unlawful search based on his race and/or national origin.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 202.

### xi.     Melvin Thompson

203.     Plaintiff MELVIN THOMPSON is a 46-year-old African-American boy who resides in the Washington Park neighborhood of the City of Chicago. Plaintiff THOMPSON resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 203.

204.     In August 2013, Plaintiff THOMPSON was walking with his two brothers to a store on the 6400 block of Vernon Avenue in Chicago, Illinois.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 204.

205.     Without any basis to formulate a reasonable, articulable suspicion that THOMPSON had engaged in or was about to engage in a crime, JANE DOE OFFICER 28 drove her car in front of Plaintiff THOMPSON and his brothers and told them to line up against her squad car.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 205.

206.     With no reasonable belief that THOMPSON was armed or dangerous, Defendant Officer handcuffed and frisked THOMPSON and his brothers and went into their pockets.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 206.

207.     Failing to find any weapons or contraband, JANE DOE OFFICER 28 allowed THOMPSON and his brothers go without making any arrests or issuing any citations.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 207.


208.    When asked why they were being stop, frisked and searched, Defendant Officer responded that THOMPSON and his brothers were walking in a high drug trafficking neighborhood, which happened to also be the neighborhood in which they lived.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 208.


209.    Upon information and belief, this incident lasted about twenty minutes.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 209.


210.    Defendant Officer subjected THOMPSON to a suspicionless stop, frisk, and unlawful search based on his race and/or national origin.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 210.


**xii.    Steve McAbee**

211.    Plaintiff STEVE McABEE is a 16-year-old African-American boy who resides in the Englewood neighborhood of the City of Chicago. Plaintiff McABEE resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 211.


212.    Over the past two years, Plaintiff McABEE was subjected to numerous suspicionless stops or stops and frisks near his home by CPD officers while going about his daily life.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 212.

213. On May 1, 2015, Plaintiff McABEE was walking home after stopping at a gas station near the intersection of 71st Street and Ashland Avenue in Chicago, Illinois.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 213.

214. Without any basis to formulate a reasonable, articulable suspicion that McABEE had engaged in or was about to engage in a crime, JOHN DOE OFFICERS 29 and 30 pulled into the gas station parking lot in their squad car. Defendant Officers shouted "Don't move!" at McABEE and then ordered him to put his hands on their car.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 214.

215. With no reasonable belief that McABEE was armed or dangerous, Defendant Officers patted McABEE down and searched through his pockets.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 215.

216. Defendant Officers ran McABEE's name through their police computer database. After his name came back clean and Defendant Officers failed to find any contraband or weapons during their stop, frisk and search, McABEE was let go and no citations were issued.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 216.

217. Upon information and belief, this stop and frisk lasted about thirty minutes.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 217.

218.     Defendant Officers subjected McABEE to a suspicionless stop and frisk based off of his race and/or national origin.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 218.


219.     In a separate incident, Plaintiff McABEE was walking to his sister's house near the intersection of 49th Street and Drexel Avenue in Chicago, Illinois.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 219.


220.     Without any basis to formulate a reasonable, articulable suspicion that McABEE had engaged in or was about to engage in a crime, JOHN DOE OFFICERS 31 and 32 pulled up to McABEE in their squad car and told him to "come here."

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 220.


221.     With no reasonable belief that McABEE was armed or dangerous, Defendant Officers patted McABEE down and searched through his pockets.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 221.


222.     After not finding any weapons or contraband, Defendant Officers let McABEE go and no citations were issued.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 222.


223.     Defendant Officers subjected McABEE to a suspicionless stop, frisk, and unlawful search based on his race and/or national origin.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 223.

### xiii. Shantay Johnson

224. Plaintiff SHANTAY JOHNSON is a 24-year-old African-American woman who resides in Chicago, Illinois. Plaintiff JOHNSON resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 224.

225. On January 2015 day at around noon, Plaintiff JOHNSON was standing outside a store at the intersection of Kedzie Avenue and Ohio Street in Chicago, Illinois.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 225.

226. Without any basis to formulate a reasonable, articulable suspicion that JOHNSON had engaged in or was about to engage in a crime, undercover JOHN DOE OFFICERS 33 and 34 pulled up in an unmarked police car and stopped JOHNSON.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 226.

227. With no reasonable belief JOHNSON was armed or dangerous, Defendant Officers put handcuffs on JOHNSON, pressed her against the police car, and frisked her. Defendant Officers also went through JOHNSON's pockets.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 227.

228. JOHNSON was arrested and charged with disorderly conduct. The charges against her were eventually dismissed.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 228.

229.    Upon information and belief, the entire incident lasted about fifteen minutes.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 229.

230.    JOHN DOE OFFICERS 33 and 34 subjected JOHNSON to a suspicionless stop, frisk, and unlawful search based on her race and/or national origin.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 230.

### xiv.    Arthur Moton

231.    Plaintiff ARTHUR MOTON is a 49-year-old African-American man who resides in the West Pullman neighborhood of the City of Chicago. Plaintiff MOTON resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 231.

232.    In May or June 2014, Plaintiff MOTON was walking through an alleyway between 94th Street and 95th Street in Chicago, Illinois. He was headed to a nearby store and used the alley as a shortcut.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 232.

233.    Without any basis to formulate a reasonable, articulable suspicion that MOTON had engaged in or was about to engage in a crime, JOHN DOE OFFICER 35 approached MOTON, told him to put his hands up, and ordered him to lean up against the squad car.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 233.

234.     With no reasonable belief that MOTON was armed or dangerous, Defendant Officer patted MOTON down and went through his pockets.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 234.

235.     Failing to find any contraband, Defendant Officer permitted Plaintiff MOTON to continue on his walk to the store without receiving any citations.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 235.

236.     Upon information and belief, the entire stop and frisk took about fifteen minutes.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 236.

237.     JOHN DOE OFFICER 35 subjected Plaintiff MORTON to a suspicionless stop, frisk, and unlawful search based on his race and/or national origin.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 237.

**xv.     Edgar Marshall, Jr.**

238.     Plaintiff EDGAR MARSHALL, JR. is an African-American man who resides in a West Side neighborhood of the City of Chicago. Plaintiff MARSHALL resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 238.

239.    On September 2, 2014, Plaintiff MARSHALL was driving near the intersection of Hirsch Street and Central Avenue in Chicago, Illinois. MARSHALL was driving from the XSport Fitness health club back to his home.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 239.


240.    Without any basis to formulate a reasonable, articulable suspicion that MARSHALL had committed or was about to commit a crime, JOHN DOE OFFICER 36, the identity of whom, upon information and belief, is Officer ROY MAZZANTI or ADOLFO GARCIA, pulled MARSHALL over in an unmarked police car.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 240.


241.    With no reasonable belief that MARSHALL was armed or dangerous, Defendant Officer ordered MARSHALL to exit his vehicle and put his hands on top of his own car. Defendant Officer then proceeded to pat MARSHALL down.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 241.


242.    MARSHALL told the Defendant Officer that he believed he had been pulled over based on racial profiling and that his Fourth Amendment rights were being violated.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 242.


243.    Defendant Officer told MARSHALL that he was pulled over because one of his headlights was out.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 243.

244.    After failing to find any weapons or contraband, Defendant Officer issued MARSHALL a traffic ticket for the broken headlight and permitted him to continue on his way. The ticket was later dismissed indicative of MARSHALL's innocence.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 244.

245.    JOHN DOE OFFICER 36, the identity of whom, upon information and belief, is Officer MAZZANTI or GARCIA, subjected Plaintiff MARSHALL to a suspicionless stop and frisk based on his race and/or national origin.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 245.

### xvi.    Michael Sanders

246.    Plaintiff MICHAEL SANDERS is a 40-year-old African-American man who resides in the Englewood neighborhood of the City of Chicago. Plaintiff SANDERS resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 246.

247.    In June 2014, Plaintiff SANDERS was standing with a group of friends in front of his aunt's apartment building at 18 N. Lorel Avenue in Chicago, Illinois.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 247.

248.    Without any basis to formulate a reasonable, articulable suspicion that SANDERS had engaged in or was about to engage in a crime, JOHN DOE OFFICERS 37 and 38, et. al., pulled up to the apartment and ordered SANDERS and his friends to put their hands up and then onto their squad car. Defendant Officers handcuffed SANDERS and everyone in the group he was with.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 248.

249. With no reasonable belief that SANDERS was armed or dangerous, Defendant Officers patted him down and searched his pockets. Defendant Officers did the same to the rest of the group.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 249.

250. Failing to find any weapons or other contraband, Defendant Officers left without issuing any citations.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 250.

251. Upon information and belief, the entire stop and frisk incident took about fifteen minutes.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 251.

252. JOHN DOE OFFICERS 37 and 38, et. al., subjected Plaintiff SANDERS to a suspicionless stop, frisk, and unlawful search based on his race and/or national origin.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 252.

253. In a separate incident in June 2014, which also occurred near 18 N. Lorel Avenue in Chicago, Illinois, Plaintiff SANDERS was sitting in his parked van when a Chicago police car drove past him.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 253.

54

254. Without any basis to formulate a reasonable, articulable suspicion that SANDERS had engaged in or was about to engage in a crime, JOHN DOE OFFICERS 37 and 38, et. al., turned their police car around, stepped out, and approached SANDERS with their guns drawn.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 254.

255. Defendant Officers asked SANDERS what he had been smoking, and SANDERS responded that he had not been smoking anything.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 255.

256. With no reasonable belief that SANDERS was armed or dangerous, Defendant Officers made him leave his van, handcuffed him, frisked him, and searched his pockets. They also searched the van. Defendant Officers placed SANDERS in the back of the police car while they carried out their search.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 256.

257. After finding no contraband or weapons on SANDERS or in his van, Defendant Officers let him go without issuing any citations.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 257.

258. Upon information and belief, the stop, frisk, and search lasted approximately fifteen minutes.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 258.

259. JOHN DOE OFFICERS 37 and 38, et. al., subjected Plaintiff SANDERS to a suspicionless stop, frisk, and unlawful search based on his race and/or national origin.

55

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 259.

### xvii. Rashawn Lindsey

260. Plaintiff RASHAWN LINDSEY is a 19-year-old African-American man who resides in the Englewood neighborhood of the City of Chicago. Plaintiff LINDSEY resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 260.

261. On April 18, 2015, 18-year-old high school student Plaintiff LINDSEY was walking home from school with his cousin and a friend at the intersection of Marquette Road and Carpenter Street in Chicago, Illinois.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 261.

262. Without any basis to formulate a reasonable, articulable suspicion that LINDSEY had engaged in or was about to engage in a crime, Officers KRIS STIPANOV and MARIO CRUZ pulled over to the side of the street, got out of their unmarked car, and approached LINDSEY, his cousin, and friend as they walked.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 262.

263. Upon information and belief, Defendant Officers had apparently ordered LINDSEY to put his hands up; however, because of the local automobile traffic, LINDSEY did not hear the order and continued walking. Defendant Officers then screamed orders at the boys more loudly and threatened to use a taser on LINDSEY, his cousin, and friend. The boys heard the orders and immediately complied by putting their hands up.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 263.

56

264.    With no reasonable belief that LINDSEY was armed or dangerous, Defendant Officers handcuffed LINDSEY, frisked him, and searched through his pockets. They did the same to the other boys with him.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 264.


265.    After failing to find any weapons or contraband, Defendant Officers let LINDSEY and the other individuals go and no citations were issued.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 265.


266.    Defendant Officers never told LINDSEY why he was initially stopped.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 266.


267.    Officers STIPANOV and CRUZ subjected Plaintiff LINDSEY to a suspicionless stop, frisk, and unlawful search based on his race and/or national origin.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 267.


**xviii.   Sidney Bell**

268.    Plaintiff SIDNEY BELL is a 54-year-old African-American man who resides in a West Side neighborhood of the City of Chicago. Plaintiff DAVIS resides in and/or visits neighborhoods where CPD officers are and/or have been deployed and conduct stop and frisks.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 268.

269.    In March 2015, Plaintiff BELL was near the intersection of Kilbourn Avenue and Monroe Street in Chicago, Illinois. BELL and his girlfriend were walking home after stopping at a local store.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 269.

270.    Without any basis to formulate a reasonable, articulable suspicion that BELL had engaged in or was about to engage in a crime, JOHN DOE OFFICERS 39, 40, 41, 42, 43, and 44 pulled their squad cars over in front of BELL and his girlfriend, exited their vehicles, and approached them with guns drawn.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 270.

271.    With no reasonable belief that BELL was armed or dangerous, Defendant Officers patted BELL down and went through his pockets. BELL's girlfriend was not frisked.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 271.

272.    After failing to find any weapons or contraband, Defendant Officers let BELL and his girlfriend go without issuing any citations.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 272.

273.    Defendant Officers told BELL that they had stopped him because someone reported that there were "suspicious people" in the neighborhood.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 273.

274.    Upon information and belief, the entire stop, frisk, and search lasted about ten minutes.

58

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 274.

275.    JOHN DOE OFFICERS 39, 40, 41, 42, 43, and 44 subjected Plaintiff BELL to a suspicionless stop, frisk, and unlawful search based on his race and/or national origin.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 275.

**B.     CPD's History of a Policy, Practice and/or Custom of Suspicionless Stops and Frisks**

276.    The CPD has a history of conducting suspicionless stops and frisks which traces back to sweeps of high-crime neighborhoods in the 1980s. A review of how *Terry* stops have been used in Chicago demonstrates a persistent problem—inadequate training, supervision and monitoring of law enforcement in minority communities.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 276.

277.    In the early 1980s, the Chicago Reporter found that more than 100,000 citizens were arrested for "disorderly conduct" during sweeps of high-crime neighborhoods. These arrests were usually preceded by a stop and frisk. These cases almost never resulted in convictions because the police generally did not show up in court to defend the arrest. An ACLU lawsuit successfully challenged this practice and, as a result, disorderly conduct arrests and their accompanying stops and frisks plummeted. *Michael Nelson v. City of Chicago*, 83-C-1168 (N.D. Ill.).

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 277.

278.    These unnecessary stops and arrests alienated African-American and Hispanic communities in Chicago. In the 1990s, organized *Terry* stops re-emerged under the "gang loitering ordinance." That ordinance—later struck down by the U.S. Supreme Court—resulted in more than 40,000 arrests over 18 months of enforcement. *See City of Chicago v. Morales*, 527 U.S. 41 (1999). Massive numbers of people were arrested and searched, often without a legally justifiable reason, for refusing to follow dispersal orders. In reality, the ordinance was a method for stopping and searching young men of color.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 278.

279. In the early 2000s, unwarranted stops and searches were still commonplace. In 2003, the ACLU filed a lawsuit on behalf of Olympic Gold medalist Shani Davis and several others, challenging a series of humiliating stop and frisk searches by Chicago police. *See* Complaint for Plaintiffs, *Davis v. City of Chicago*, 219 F.R.D. 593 (N.D. Ill. 2004), (No. 03 C 2094), 2003 WL 23800673.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 279.

280. Data collected in connection with that suit showed a pattern of unjustified stops and searches, resulting in the unnecessary detention of young people, mostly young people of color. As a result of the *Davis* lawsuit, the Chicago police made changes to their policy of stopping and searching on the streets, including a requirement to record why stops occur.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 280.

281. The manner in which the City implemented the recordkeeping has proved insufficient. Today, Chicago's reliance on unconstitutional stop and frisks has increased dramatically.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 281.

i. **ACLU's March 2015 Report and Statistics**

282. Under current CPD policy, Chicago police officers are required to justify their stops on "contact cards." Supervisors are required to review the facts and circumstances of each individual stop, correct the officer, and if necessary, recommend training or discipline to officers who have failed to provide a legal justification for a stop.

**ANSWER:** Officer Laurin admits that under current CPD policy as set forth in Special Order S04-13-09 (effective June 10, 2016), Chicago police officers are required to document

investigatory stops and enforcement of the Gang and Narcotics-Related Ordinances on Investigatory Stop Reports and that Special Order 04-13-09 delineates the responsibilities of supervisory officers.

283.    In March 2015, the ACLU published a report regarding its investigation into the CPD's practice of stop and frisk and the statistics were alarming.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 283.

284.    The ACLU found that for half of the CPD's stops (based on the sample analyzed), the officer did not record legally sufficient reasons to establish reasonable suspicion. The ACLU also found that a large percentage of Chicago police officers did not record the reasons for the stop, even though the department requires that officers do so. These stops made without sufficient cause violate the Fourth Amendment guarantee against unreasonable searches and seizures.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 284.

285.    In many narrative fields, the officers stated that they stopped people for reasons unrelated to a suspicion of a crime.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 285.

286.    A review of the contact card database for the four-month period of May through August 2014 indicates that African-Americans are disproportionately subjected to stops when compared to their white counterparts. African-American Chicagoans were subjected to 182,048 stops and frisks. This meant African-Americans were the targets of 72% of all stops, despite constituting just 32% of the city's population.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 286.

287.    Also, there are more stops per capita in minority neighborhoods. For example, in the minority district Englewood there were 266 stops per 1,000 people, while in the predominately white district Lincoln/Foster there were 43.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 287.

288.    The difference in stop rates among different races also occurs outside minority communities. In Chicago's predominantly white police districts—Near North, Town Hall, and Jefferson Park—the disparity between African-American population and percentage of stops is even more blatant than city-wide data. For example, although Jefferson Park's African American population is just 1%, African Americans make up almost 15% of all stops.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 288.

289.    Most shockingly, there were more than 250,000 stops that did not lead to an arrest in Chicago for the time period of May 1, 2014 through August 31, 2014. Comparing stops to population, Chicagoans were stopped at a far higher rate than New Yorkers at the height of New York City's stop and frisk practice in 2011.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 289.

290.    In 2014, there were 93.6 stops in Chicago per 1,000 people (between the months of May-August 2014). By contrast, in 2011, at the height of New York City's stop and frisk practice, there were 22.9 stops per 1,000 people.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 290.

291.    A review of the contact card database for the four-month period of May through August 2014 indicates that Hispanics are also disproportionately subjected to stops when compared to their white counterparts.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 291.

292.    Defendants have applied a facially neutral policy, the written anti-racial profiling policy, to Plaintiffs, and similarly situated individuals, in an intentionally racially discriminatory manner.

**ANSWER:**    Officer Laurin denies the allegations contained in Paragraph 292.

293.    This CPD practice can be exemplified in other policing practices in the City as well. In May 2015, the Tribune documented that "in Chicago, 84 percent of the [DUI] roadside checks [over the past several years] were scheduled in areas populated mostly by minorities while roadways in areas with more DUI-related crashes that are predominantly white are checked less often, or not at all." Austin, a police district on the West Side, had 10 checkpoints between February 2010 and June 2014. Jefferson Park, a Northwest Side district, had none — even though Jefferson Park had four times as many alcohol-related accidents on local streets. During that span, three of the Chicago's five predominantly white districts hosted no roadblocks, but each of the 13 districts that are mostly black or Latino had at least five.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 293.

294.    Upon information and belief, CPD officers are also under pressure to conduct an increasing number of stops and frisks. Upon information and belief, the stop and frisk reports are tracked and evaluated at the CPD's CompStat meetings where commanders are questioned about their precinct's crime statistics. CompStat focus gives CPD officers a strong incentive to make and document stops because an officer's numbers suggest productivity.

**ANSWER:**    Officer Laurin denies that CPD officers are under pressure to conduct an

increasing number of stops and frisks.  Officer Laurin lacks knowledge or information sufficient

to form a belief as to the truth of the remaining allegations contained in Paragraph 294.

295.    At one CompStat meeting, Defendant McCARTHY was quoted by the Chicago Tribune stating that "[e]verything will improve if [police officers] get out of the cars and put our hands on people. Make sure your officers are doing this, making out contact cards, and make sure we are stopping the right people at the right times and the right places."

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 295.


296.     Through the first 10 months of 2014, officers filled out more than 600,000 contact cards, which exceeds the previous year's total of 516,000 and is far more than the 379,000 written in 2011, when Defendant McCARTHY took office.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 296.


297.     CPD officers are not required to fill out contact cards during "voluntary" interactions with citizens nor if an investigatory stop leads to an arrest. Thus, the amount of stops and frisks performed by police is projected to be significantly higher.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 297.


298.     Public accounts provide further evidence of unlawful stops and frisks which lack the reasonable suspicion required by the Fourth Amendment and reveal intent to discriminate on the basis of race. In January 2013, the ACLU wrote a memo to Chicago Mayor Rahm Emanuel, Defendant McCARTHY and the City of Chicago's Corporation Counsel about the importance of monitoring Chicago's stop and frisk policy.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 298.


299.     Despite receiving numerous requests by various organizations to conduct stop and frisks within the bounds of the Constitution, the CITY OF CHICAGO and its final policymakers have repeatedly and consciously failed to take appropriate action.

**ANSWER:**     Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 299.

C. **CPD's Suspicionless Stop and Frisk Practice is a Direct and Proximate Result of Defendants' Policies, Practices and/or Customs**

300.    The Fourth Amendment prohibits police officers from conducting stops and frisks without a reasonable, articulable suspicion of criminal conduct; frisking persons without a reasonable belief that they are armed or presently dangerous; searching and seizing persons without probable cause; or using excessive force in the course of policing activities. Additionally, the Equal Protection Clause of the Fourteenth Amendment bars police officers from targeting individuals for stops and frisks on the basis of race or national origin.

**ANSWER:**    Officer Laurin admits that the Fourth Amendment states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Officer Laurin admits that the Equal Protection Clause of the Fourteenth Amendment states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." The remaining allegations contained in Paragraph 300 constitute legal conclusions to which no answer is required. To the extent an answer may be required, Officer Laurin denies the remaining allegations contained in Paragraph 300.

301.    The pervasive unconstitutional practices of the CPD are a direct and proximate result of policies, practices and/or customs devised, implemented, enforced and sanctioned by the City and its policymakers, including Superintendent McCARTHY, and their confederates whose identities are presently unknown, with the knowledge that such policies, practices and/or customs would lead to violations of the Fourth and Fourteenth Amendments. Those policies, practices and/or customs include: (a) failing to properly screen, train and supervise CPD officers, (b) failing to adequately monitor and discipline CPD officers, and (c) encouraging, sanctioning and failing to rectify the CPD's custom and practice of suspicionless stops and frisks.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 301.

i.      **Chicago's failure to properly screen, train and Supervise CPD Officers**

302.    Although fully aware that the work of the CPD demands extensive training, superior judgment and close supervision, the City and Superintendent McCARTHY failed to properly screen, train and supervise CPD officers, knowing that such failures would result in Fourth and Fourteenth Amendment violations.

   **ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 302.


303.    Pursuant to CPD General Order G02-04, Superintendent McCARTHY was required to implement numerous training requirements concerning the written CPD policy prohibiting racial profiling. Upon information and belief, Defendants have failed to properly train and supervise CPD officers, including supervisors, concerning the legal and factual bases for conducting stops and/or frisks that comply with the Fourth and Fourteenth Amendments in an effective manner.

   **ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 303.


304.    The inadequate screening, training and supervision of the CPD is a direct and proximate cause of the CPD's rampant unconstitutional stops and frisks. As a direct and proximate result of the Defendants' failure to screen, train and supervise CPD officers, tens of thousands of people have been subjected to unlawful stops and frisks, many times simply because of their race and/or national origin. By failing to properly screen, train and supervise CPD officers, the City, Superintendent McCARTHY, and other City policymakers have acted recklessly and with deliberate indifference to the constitutional rights of those who would come into contact with the CPD.

   **ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 304.


ii.     **Chicago's failure to monitor and discipline CPD officers**

305.    The CPD's widespread abuses are also a direct and proximate result of the failure of the City and Superintendent McCARTHY to properly and adequately monitor, discipline and take necessary corrective action against CPD officers who engage in, encourage or conceal unconstitutional practices. Among other things, these Defendants knowingly, deliberately and recklessly have failed:

66

a.    to take appropriate disciplinary action and corrective measures against CPD officers who have engaged in suspicionless stops and frisks;

b.    to adequately monitor CPD officers who have incurred a substantial number of civilian complaints, even in instances where the number of complaints should have triggered monitoring under established departmental guidelines;

c.    to devise and implement appropriate oversight, disciplinary and remedial measures in the face of extensive evidence that no charges are brought against the overwhelming majority of persons stopped and frisked by CPD officers;

d.    to conduct adequate auditing to determine if the stop and frisks conducted by CPD officers comply with the CPD's written policy prohibiting stop and frisks that are not based upon reasonable suspicion and use race and/or national origin as the determinative factor in initiating police action;

e.    to take sufficient, if any, steps to curb CPD officers' non-compliance with departmental directives requiring that contact cards be completed for each stop and frisk;

f.    to take sufficient corrective and remedial action against CPD officers who provide fabricated, false, or impermissible justifications for stops and frisks; and

g.    to take sufficient corrective, disciplinary and remedial action to combat the so-called "blue wall of silence," wherein CPD officers regularly conceal or fail to report police misconduct, *inter alia*, in sworn testimony, official reports, statements to the Independent Police Review Authority (IPRA), the Internal Affairs Division, and in public statements.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 305.


306.    The City and Superintendent McCARTHY failed to properly and adequately monitor, discipline and take necessary corrective action against CPD officers, knowing that such omissions would lead to Fourth and Fourteenth Amendment violations. By such acts and omissions, the City and McCARTHY have acted recklessly and with deliberate indifference to the constitutional rights of those who would come into contact with the CPD.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 306.

### iii.    Encouraging, sanctioning and failing to rectify the CPD's suspicionless stops and frisks

307.    With the knowledge that such acts and omissions would create a likelihood of Fourth and Fourteenth Amendment violations, the City and its policymakers, including Superintendent McCARTHY, also have encouraged, sanctioned and failed to rectify the CPD's abusive and unconstitutional practices.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 307.

308.    Upon information and belief, Defendants the City and its policymakers, including Superintendent McCARTHY, have enacted and enforced formal and/or unwritten "productivity standards" or de facto quotas of a certain number of stops and frisks and specific types of arrests per month for each CPD officer. Upon information and belief, in their efforts to satisfy the productivity standards, CPD officers have engaged in widespread suspicionless stops and frisks of individuals.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 308.

309.    Upon information and belief, Defendants the City and its policymakers, including Superintendent McCARTHY, have also used a program called the Violence Reduction Initiative (VRI) to encourage Chicago police officers to carry out its widespread and pervasive policy of stops and frisks, with disregard for the fact that large numbers of those stops and frisks are not based on constitutionally sufficient grounds.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 309.

310.    Upon information and belief, as part of the VMI [sic] program, Chicago police officers are instructed to "post up" in a certain area and/or "saturate" a neighborhood while actively attempting to stop and frisk as many people as possible, ultimately amounting to a practice of creating an unconstitutional drag net of certain neighborhoods by the Chicago Police Department. Upon information and belief, Chicago police officers are told formally or informally that a larger gross number of stops or stops and frisks indicates greater "activity" by that specific police officer, and greater activity gives officers perks, such as more opportunities for overtime pay, choice of vacation days, better chances of promotion, and so forth. This creates the perverse

incentive for officers to focus on VRI numbers in order to significantly supplement their income, to the detriment of normal police work and citizens' civil rights.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 310.

311. Upon information and belief, there is also a de facto policy and custom in the Chicago Police Department to take measures to ensure illegal or unconstitutional police activity, such as unconstitutional stops and frisks, are not recorded by police dash cameras or other surveillance equipment. Upon information and belief, dash cameras in police vehicles turn on once a police car's emergency equipment (e.g. police lights) are activated. Whenever police officers' conduct a stop and frisk, they are generally required to turn on the emergency equipment so the interaction is recorded. This is particularly necessary and important when police officers are working from an unmarked police car so citizens are aware that they are dealing with a police officer. Upon information and belief, the Chicago Police Department has a de facto policy and custom where Chicago police officers often do not activate their emergency equipment during stop and frisk incidents, with the intent of denying citizens the opportunity to challenge an unconstitutional interaction.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 311.

312. As a direct and proximate result of the above policies, practices and/or customs, tens of thousands of people have been, and will continue to be, subjected to unconstitutional stops, frisks, searches and seizures by CPD officers, sometimes in violent encounters, simply because such individuals happen to be the wrong color, in the wrong place, at the wrong time. Through such acts and omissions, the City and Superintendent McCARTHY have acted recklessly and with deliberate indifference to the constitutional rights of individuals who would come into contact with the CPD.

**ANSWER:** Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 312.

**D.** **Recent Measures Are Inadequate and Insufficient to Eradicate, Curb or Deter the Suspicionless Stop and Frisk Policy**

313. The Chicago Police Department refuses to keep sufficient data about its officers' stops and frisks. For example, only stops are systematically recorded, but Chicago Police Department policies do not require officers to note whether a frisk took place as well. This

administrative failure to record data on whether an arrest was made, whether a frisk was made, and the results of a search makes it difficult for police supervisors, or the public, to identify problem areas in order to make necessary policy changes.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 313.

314.    Contact cards are not required to be filled out if the stop leads to an arrest or an ordinance violation. Currently, CPD officers do not identify on arrest reports whether a *Terry* stop led to an arrest.

**ANSWER:**    Officer Laurin denies the allegations contained in Paragraph 314.

315.    In April 2014, the CPD changed its policy to limit contact cards to stops and the enforcement of loitering ordinances. This measure has not sufficiently or adequately addressed, much less irrevocably eradicated, curbed, or deterred the CPD's pervasive policy, practice and/or custom of unconstitutional stops and frisks. Thus, despite these policy changes, Plaintiffs, and hundreds of thousands of other individuals, continue to face the imminent likelihood of becoming victims of the CPD's constitutional abuses in violation of the Fourth and Fourteenth Amendments to the U.S. and Illinois Constitutions.

**ANSWER:**    Officer Laurin admits the CPD changed its policy in April 2014 to limit

contact information cards to investigatory stops and enforcement of loitering ordinances.  Officer

Laurin lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in Paragraph 315.

**COUNT 1 – 42 U.S.C. §1983 – *Monell* – Violations of the Fourth Amendment**
**(Claims of All Named Plaintiffs and Class Members Against the City of Chicago**
**and Superintendent McCARTHY for Violation of the Fourth Amendment)**

316.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 1 of

the Fifth Amended Complaint because said Count is only directed against the City and

Superintendent McCarthy.

70

317. Defendants City, Superintendent McCARTHY, DOE OFFICERS 1-44, and other undetermined Chicago Police Officers have implemented, enforced, encouraged and sanctioned a policy, practice and/or custom of stopping, frisking, searching and detaining the members of the Plaintiff class without the reasonable articulable suspicion of criminality required by the Fourth Amendment. These constitutional abuses often are coupled with unconstitutional searches and seizures and, at times, excessive force.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 1 of

the Fifth Amended Complaint because said Count is only directed against the City and

Superintendent McCarthy.

318. The CPD's constitutional abuses and violations were, and are, directly and proximately caused by policies, practices and/or customs devised, implemented, enforced, encouraged and sanctioned by the City and Superintendent McCARTHY, including: (a) the failure to adequately and properly screen, train, and supervise CPD officers; (b) the failure to properly and adequately monitor and discipline CPD officers; and (c) the overt and tacit encouragement and sanctioning of, and the failure to rectify, the CPD's suspicionless stop and frisk practices.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 1 of

the Fifth Amended Complaint because said Count is only directed against the City and

Superintendent McCarthy.

319. Each of the Defendants has acted with deliberate indifference to the Fourth Amendment rights of the named Plaintiffs and other members of the class. As a direct and proximate result of the acts and omissions of each of the Defendants, the Fourth Amendment rights of the named Plaintiffs and other class members have been violated. By acting under color of state law to deprive the named Plaintiffs and other class members of their rights under the Fourth Amendment, the Defendants are in violation of 42 U.S.C. § 1983, which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 1 of

the Fifth Amended Complaint because said Count is only directed against the City and

Superintendent McCarthy.

320.    The CPD targets African-American and Hispanic individuals for illegal stops and frisks in areas where Plaintiffs reside and/or visit. Thus, a real and immediate threat exists that the Fourth Amendment rights of the named Plaintiffs and other class members will be violated by CPD officers in the future. Numerous named Plaintiffs have been stopped multiple times, often close to their homes, while going about their daily lives by CPD officers. Moreover, because Defendants' policies, practices and/or customs subject the named Plaintiffs and other class members to stops and frisks without any reasonable, articulable suspicion of criminality, and often on the basis of race and/or national origin, the named Plaintiffs and other class members cannot alter their behavior to avoid future violations of their constitutional and civil rights at the hands of the CPD.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 1 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

321.    The Plaintiffs fear being stopped and frisked under the current policy. Stops, frisks, and illegal searches have taken place even when engaged in normal, everyday activities on or near their own property. The Plaintiffs seek to stop the CPD's current practice in order to relieve themselves of this constant apprehension.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 1 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

322.    The named Plaintiffs and other members of the class have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from continuing the CPD's policy, practice and/or custom of unconstitutional stops and frisks, and the policies, practices and/or customs that have directly and proximately caused such constitutional abuses.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 1 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

323.    The acts and omissions of Defendants Superintendent McCARTHY and other City policymakers explained herein were intentional, wanton, malicious, reckless and oppressive,

thus, entitling the named Plaintiffs and other class members to an award of punitive damages. In engaging in such conduct, Superintendent McCARTHY and City policymakers acted beyond the scope of their jurisdiction, without authority under law, and in abuse of their powers.

**ANSWER:** Officer Laurin makes no answer to the allegations contained in Count 1 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

324. In addition to punitive damages, Plaintiffs and other class members seek actual damages and injunctive relief.

**ANSWER:** Officer Laurin makes no answer to the allegations contained in Count 1 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

### COUNT 2 – 42 U.S.C. §1983 – *Monell* – Violations of the Equal Protection Clause
**(Claims of All Named Plaintiffs and Class Members Against the City of Chicago and Superintendent McCARTHY for Violation of the Equal Protection Clause)**

325. Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:** Officer Laurin makes no answer to the allegations contained in Count 2 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

326. Defendants City, Superintendent McCARTHY, DOE OFFICERS, and other undetermined Chicago Police Officers 1-44 have implemented and enforced a policy, practice and/or custom of stopping, frisking, searching and detaining the named Plaintiffs and members of the Plaintiff class without the reasonable articulable suspicion of criminality required by the Fourth Amendment and based solely on their race and/or national origin. These suspicionless stops and frisks have and are being conducted predominantly on African-American and Hispanic individuals on the basis of racial and/or national origin profiling. The CPD intentionally applies a facially neutral policy in a discriminatory manner. As a result, the CPD's policy, practice and/or custom of suspicionless stops and frisks violate the Equal Protection Clause of the Fourteenth Amendment.

73

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 2 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

327.     The ACLU analysis of the available stop and frisk data from police contact cards shows that CPD stop and frisk policy has had a discriminatory effect on African American and Hispanic communities. African Americans make up 32% of the City's population, but made up 72% of all stops. Minority neighborhoods had more stops per capita than white neighborhoods. In white neighborhoods, minorities are even more likely to be stopped than they are in minority neighborhoods.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 2 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

328.     Upon information and belief, the CPD enacted this policy with a discriminatory purpose. Defendants pursued this policy precisely because of the adverse effects it had on the targeted group: African-American and Hispanic men. Defendant McCARTHY has made plain that the point of the stop and frisk program is to have police actively stop and frisk "the right people at the right times and the right places."

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 2 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

329.     Additionally, the City was deliberately indifferent to the unconstitutional acts committed by CPD officers through the stop and frisk program. Subordinates of the City carried out the policy at least in part because of the adverse effects it had on African American and Hispanic men, and a reasonable inference can be drawn that supervisors intended those effects to occur. By focusing on the "right people at the right time and the right places," the officers were following a course of action which was inherently designed to adversely affect the target group, African-Americans and Hispanics, more than others. Despite frequent notice of racial disparities in stops, most compellingly in the ACLU statistical analysis of contact cards, the program remains fundamentally unchanged. Senior officials also have consistently failed to effectively discipline officers for proven violations. These factors show a deliberate indifference on the part of City officials over the unlawful consequences of the stop and frisk program.

**ANSWER:** Officer Laurin makes no answer to the allegations contained in Count 2 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

330. The CPD's constitutional abuses were and are directly and proximately caused by policies, practices and/or customs devised, implemented, enforced, encouraged, and sanctioned by the City and Superintendent McCARTHY, including: (a) the failure to adequately and properly screen, train, and supervise CPD officers; (b) the failure to adequately and properly monitor and discipline the CPD and its officers; and (c) the encouragement and sanctioning of and failure to rectify the CPD's use of racial and/or national origin profiling in making stops and frisks.

**ANSWER:** Officer Laurin makes no answer to the allegations contained in Count 2 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

331. Each of the Defendants has acted with deliberate indifference to the Fourteenth Amendment rights of the named Plaintiffs and class members. As a direct and proximate result of the aforesaid acts and omissions of the Defendants and each of them, the Fourteenth Amendment rights of the named Plaintiffs and class members have been violated. By their acts and omissions, Defendants have acted under color of state law to deprive the named Plaintiffs and class members of their Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:** Officer Laurin makes no answer to the allegations contained in Count 2 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

332. Due to the CPD targeting African-American and Hispanic persons in areas where the named Plaintiffs and other class members reside and/or visit, a real and immediate threat exists that the Fourteenth Amendment rights of the named Plaintiffs and other class members will be violated by CPD officers in the future. Numerous Plaintiffs have already been stopped multiple times, often near their homes, while going about their daily lives by CPD officers. Moreover, because Defendants' policies, practices and/or customs subject the named Plaintiffs and other class members to repeated stops and frisks without any reasonable, articulable suspicion of criminality, and often on the basis of race and/or national origin, the named

Plaintiffs and other class members cannot alter their behavior to avoid future violations of their constitutional and civil rights at the hands of the CPD.

**ANSWER:** Officer Laurin makes no answer to the allegations contained in Count 2 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

333. The named Plaintiffs fear being stopped and frisked repeatedly under the current policy. Stops, frisks, and illegal searches have taken place even when engaged in normal, everyday activities on their own property. The Plaintiffs seek to stop the CPD's current practice in order to relieve themselves of this constant apprehension.

**ANSWER:** Officer Laurin makes no answer to the allegations contained in Count 2 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

334. The named Plaintiffs and other class members have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from continuing the CPD's policy, practice and/or custom of unconstitutional race and/or national origin-based stops and frisks, and the policies, practices and/or customs that have directly and proximately caused such constitutional abuses.

**ANSWER:** Officer Laurin makes no answer to the allegations contained in Count 2 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

335. The acts and omissions of Defendants Superintendent McCARTHY and other City policymakers explained herein were intentional, wanton, malicious, reckless and oppressive, thus, entitling the named Plaintiffs and other class members to an award of punitive damages. In engaging in such conduct, Superintendent McCARTHY and City policymakers acted beyond the scope of their jurisdiction, without authority under law, and in abuse of their powers.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 2 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

336.    In addition to punitive damages, Plaintiffs and other class members seek actual damages and injunctive relief.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 2 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

**COUNT 3 – 42 U.S.C. §1983—Monell – Unconstitutional Customs, Policies, and Practices**
**(Claims of All Named Plaintiffs and Class Members Against the City of Chicago**
**and Superintendent McCARTHY)**

337.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 3 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

338.    Defendants City and Superintendent McCARTHY have directly and proximately caused the CPD's policy, practice and/or custom of suspicionless stopping, frisking, searching and detaining in violation of the Fourth and Fourteenth Amendments, with deliberate indifference to the constitutional rights of Plaintiffs by devising, implementing, enforcing, adopting, sanctioning and ratifying a policy, practice and/or custom of: (a) failing to properly screen, train, and supervise CPD officers; (b) failing to adequately monitor and discipline the CPD and its officers; and (c) encouraging, sanctioning and failing to rectify the CPD's constitutional abuses.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 3 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

339.    As a direct and proximate result of the aforesaid acts and omissions, Defendants City and Superintendent McCARTHY have each deprived Plaintiffs and other class members of their Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 3 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

340.    The acts and omissions of Defendants Superintendent McCARTHY and other City policymakers explained herein were intentional, wanton, malicious, reckless and oppressive, thus, entitling the named Plaintiffs and other class members to an award of punitive damages. In engaging in such conduct, Superintendent McCARTHY and City policymakers acted beyond the scope of their jurisdiction, without authority under law, and in abuse of their powers.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 3 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

341.    In addition to punitive damages, Plaintiffs and other class members seek actual damages and injunctive relief.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 3 of the Fifth Amended Complaint because said Count is only directed against the City and Superintendent McCarthy.

### COUNT 4 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest
**(Individual Claims of Darnell Smith and Darren Nathan against
John Doe Officers 1 and 2)**

342.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 4 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 1 and 2.

78

343. The conduct of JOHN DOE OFFICERS 1 and 2 in stopping, frisking and searching Plaintiffs DARNELL SMITH and DARREN NATHAN on May 3, 2013, were performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, each of these stops and frisks were performed on the basis of racial and/or national origin profiling.

**ANSWER:** Officer Laurin makes no answer to the allegations contained in Count 4 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 1 and 2.

344. As a direct and proximate result of such acts, JOHN DOE OFFICERS 1 and 2 deprived SMITH and NATHAN of their Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:** Officer Laurin makes no answer to the allegations contained in Count 4 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 1 and 2.

345. As a direct and proximate result of those constitutional abuses, Plaintiffs had suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:** Officer Laurin makes no answer to the allegations contained in Count 4 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 1 and 2.

346. The acts of JOHN DOE OFFICERS 1 and 2 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:** Officer Laurin makes no answer to the allegations contained in Count 4 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 1 and 2.

### COUNT 5 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest
**(Individual Claims of Darnell Smith against Officers**
**Anthony Gemignani and Michael Callahan)**

347.   Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**   Officer Laurin makes no answer to the allegations contained in Count 5 of

the Fifth Amended Complaint because said Count is only directed against Defendants Anthony

Gemignani and Michael Callahan.

348.   The conduct of Officers ANTHONY GEMIGNANI and MICHAEL
CALLAHAN in stopping, frisking and searching Plaintiff DARNELL SMITH on October 9,
2014, was performed under color of law and without any reasonable suspicion of criminality or
other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis
of racial and/or national origin profiling.

**ANSWER:**   Officer Laurin makes no answer to the allegations contained in Count 5 of

the Fifth Amended Complaint because said Count is only directed against Defendants Anthony

Gemignani and Michael Callahan.

349.   As a direct and proximate result of such acts, Officers GEMIGNANI and
CALLAHAN deprived SMITH of his Fourth and Fourteenth Amendment rights in violation of
42 U.S.C. § 1983.

**ANSWER:**   Officer Laurin makes no answer to the allegations contained in Count 5 of

the Fifth Amended Complaint because said Count is only directed against Defendants Anthony

Gemignani and Michael Callahan.

350.   As a direct and proximate result of those constitutional abuses, Plaintiff has
suffered and will continue to suffer physical, mental and emotional pain and suffering, mental
anguish, embarrassment and humiliation.

80

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 5 of the Fifth Amended Complaint because said Count is only directed against Defendants Anthony Gemignani and Michael Callahan.

351.    The acts of Officers GEMIGNANI and CALLAHAN were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 5 of the Fifth Amended Complaint because said Count is only directed against Defendants Anthony Gemignani and Michael Callahan.

**COUNT 6 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest**
**(Individual Claims of Gregory Davis against John Doe Officers 5, 6, 7, and 8)**

352.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 6 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 5, 6, 7, and 8.

353.    The conduct of JOHN DOE OFFICERS 5 and 6 in stopping Plaintiff GREGORY DAVIS in July 2014, and the conduct of JOHN DOE OFFICERS 7 and 8 in stopping GREGORY DAVIS in October 2014, was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, each of these stops was performed on the basis of racial and/or national origin profiling.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 6 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 5, 6, 7, and 8.

354.    As a direct and proximate result of such acts, Defendant Officers deprived DAVIS of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 6 of

the Fifth Amended Complaint because said Count is only directed against John Doe Officers 5,

6, 7, and 8.

355.    As a direct and proximate result of those constitutional abuses, Plaintiff has
suffered and will continue to suffer physical, mental and emotional pain and suffering, mental
anguish, embarrassment and humiliation.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 6 of

the Fifth Amended Complaint because said Count is only directed against John Doe Officers 5,

6, 7, and 8.

356.    The acts of Defendant Officers were intentional, wanton, malicious, reckless and
oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 6 of

the Fifth Amended Complaint because said Count is only directed against John Doe Officers 5,

6, 7, and 8.

**COUNT 7 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest**
**(Individual Claims of Herbert Dyer, Jr. against John Doe Officers 9, 10, 11, 12, and 13)**

357.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 7 of

the Fifth Amended Complaint because said Count is only directed against John Doe Officers 9,

10, 11, 12, and 13.

358.    The conduct of JOHN DOE OFFICERS 9, 10, 11, 12, and 13 in stopping, frisking
and searching Plaintiff HERBERT DYER, JR. in August 2014, was performed under color of
law and without any reasonable suspicion of criminality or other constitutionally required
grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin
profiling.

82

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 7 of

the Fifth Amended Complaint because said Count is only directed against John Doe Officers 9,

10, 11, 12, and 13.


359.    As a direct and proximate result of such acts, JOHN DOE OFFICERS 9, 10, 11, 12, and 13 deprived DYER of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 7 of

the Fifth Amended Complaint because said Count is only directed against John Doe Officers 9,

10, 11, 12, and 13.


360.    As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 7 of

the Fifth Amended Complaint because said Count is only directed against John Doe Officers 9,

10, 11, 12, and 13.


361.    The acts of JOHN DOE OFFICERS 9, 10, 11, 12, and 13 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 7 of

the Fifth Amended Complaint because said Count is only directed against John Doe Officers 9,

10, 11, 12, and 13.


**COUNT 8 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest**
**(Individual Claims of Herbert Dyer, Jr. against John Doe Officers 14 and 15)**

362.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 8 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 14 and 15.

363.     The conduct of JOHN DOE OFFICERS 14 and 15 in stopping, frisking and searching Plaintiff HERBERT DYER, JR. in February 2015, was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 8 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 14 and 15.

364.     As a direct and proximate result of such acts, JOHN DOE OFFICERS 14 and 15 deprived DYER of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 8 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 14 and 15.

365.     As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 8 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 14 and 15.

366.     The acts of JOHN DOE OFFICERS 14 and 15 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 8 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 14 and 15.

### COUNT 9 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest
### (Individual Claims of Mark Nevilles against John Doe Officers 16 and 17)

367.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 9 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 16 and 17.

368.    The conduct of JOHN DOE OFFICERS 16 and 17 in stopping, frisking and searching Plaintiff MARK NEVILLES in April 2015, was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 9 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 16 and 17.

369.    As a direct and proximate result of such acts, JOHN DOE OFFICERS 16 and 17deprived NEVILLES of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 9 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 16 and 17.

370.    As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 9 of

the Fifth Amended Complaint because said Count is only directed against John Doe Officers 16

and 17.

371.    The acts of JOHN DOE OFFICERS 16 and 17 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 9 of

the Fifth Amended Complaint because said Count is only directed against John Doe Officers 16

and 17.

**COUNT 10 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest**
**(Individual Claims of Hector Fantanez against John Doe Officer 18)**

372.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 10

of the Fifth Amended Complaint because said Count is only directed against John Doe Officer

18.

373.    The conduct of JOHN DOE OFFICER 18 in stopping, frisking and searching Plaintiff HECTOR FANTANEZ on April 3, 2015, was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 10

of the Fifth Amended Complaint because said Count is only directed against John Doe Officer

18.

374.    As a direct and proximate result of such acts, JOHN DOE OFFICER 18 deprived FANTANEZ of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 10 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 18.

375.    As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 10 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 18.

376.    The acts of JOHN DOE OFFICER 18 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 10 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 18.

**COUNT 11 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest**
**(Individual Claims of Marcell Davis against Officers Nicholas Cordova, Thomas Laurin, Patrick Kelly, Daniel Schmit, and John Doe Officer 19, et al.)**

377.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**    Officer Laurin reasserts and incorporates by reference his answers to all paragraphs above as though fully set forth herein.

378.    The conduct of Officers CORDOVA, LAURIN, KELLY, SCHMIT, and JOHN DOE OFFICERS 19, et al. in stopping, frisking and searching Plaintiff MARCELL DAVIS in October, December, February, and twice in March 2015, was performed under color of law and

without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:** Officer Laurin admits that the stop of Plaintiff Davis on March 9, 2015 was performed under color of law, but denies the remaining allegations as to this encounter. Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 378.

379. As a direct and proximate result of such acts, Officers CORDOVA, LAURIN, KELLY, SCHMIT, and JOHN DOE OFFICERS 19, et al. deprived DAVIS of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:** Officer Laurin denies the allegations contained in Paragraph 379 as related to him. Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 379.

380. As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:** Officer Laurin denies the allegations contained in Paragraph 380 as related to him. Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 380.

381. The acts of Officers CORDOVA, LAURIN, KELLY, SCHMIT, and JOHN DOE OFFICERS 19, et al. were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:** Officer Laurin denies the allegations contained in Paragraph 381 as related to him. Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 381.

**COUNT 12 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest**
**(Individual Claims of Anthony Polk against John Doe Officers 20 and 21)**

382.     Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 12 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 20 and 21.

383.     The conduct of JOHN DOE OFFICERS 20 and 21 in stopping, frisking and searching Plaintiff ANTHONY POLK in January 2015, was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 12 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 20 and 21.

384.     As a direct and proximate result of such acts, JOHN DOE OFFICERS 20 and 21 deprived POLK of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 12 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 20 and 21.

385.     As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 12 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 20 and 21.

386.     The acts of JOHN DOE OFFICERS 20 and 21 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 12 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 20 and 21.

**COUNT 13 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest**
**(Individual Claims of Calvin Jackson against John Doe Officers 22 and 23)**

387.     Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 13 of the Fifth Amended Complaint because said Count is only directed against Defendants John Doe Officers 22 and 23.

388.     The conduct of JOHN DOE OFFICERS 22 and 23 in stopping, frisking and searching Plaintiff CALVIN JACKSON in June 2013 was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 13 of the Fifth Amended Complaint because said Count is only directed against Defendants John Doe Officers 22 and 23.

389.     As a direct and proximate result of such acts, JOHN DOE OFFICERS 22 and 23 deprived JACKSON of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 13 of the Fifth Amended Complaint because said Count is only directed against Defendants John Doe Officers 22 and 23.

390.    As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 13

of the Fifth Amended Complaint because said Count is only directed against Defendants John

Doe Officers 22 and 23.

391.    The acts of JOHN DOE OFFICERS 22 and 23 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 13

of the Fifth Amended Complaint because said Count is only directed against Defendants John

Doe Officers 22 and 23.

**COUNT 14 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest**
**(Individual Claims of Carl McCORD against John Doe Officer 24)**

392.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 14

of the Fifth Amended Complaint because said Count is only directed against John Doe Officer

24.

393.    The conduct of JOHN DOE OFFICER 24 in stopping, frisking and searching Plaintiff CARL McCORD on a date in November 2014 or December 2014 was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 14

of the Fifth Amended Complaint because said Count is only directed against John Doe Officer

24.

394.     As a direct and proximate result of such acts, JOHN DOE OFFICER 24 deprived McCORD of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 14 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 24.

395.     As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 14 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 24.

396.     The acts of JOHN DOE OFFICER 24 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 14 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 24.

### COUNT 15 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest
### (Individual Claims of Carl McCord against John Doe Officer 25)

397.     Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 15 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 25.

398.     The conduct of JOHN DOE OFFICER 25 in stopping, frisking and searching Plaintiff CARL McCORD on a date in November 2014 or December 2014 was performed under

color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 15 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 25.

399.    As a direct and proximate result of such acts, JOHN DOE OFFICER 25 deprived McCORD of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 15 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 25.

400.    As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 15 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 25.

401.    The acts of JOHN DOE OFFICER 25 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 15 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 25.

## COUNT 16 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest
### (Individual Claims of Carl McCord against John Doe Officer 26, et al.)

402.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 16 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 26, et al.

403.    The conduct of JOHN DOE OFFICER 26 et al. in stopping, frisking and searching Plaintiff CARL McCORD on a date in November 2014 or December 2014 was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 16 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 26, et al.

404.    As a direct and proximate result of such acts, JOHN DOE OFFICER 26, et al. deprived McCORD of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 16 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 26, et al.

405.    As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 16 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 26, et al.

406.     The acts of JOHN DOE OFFICER 26, et al. were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 16 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 26, et al.

### COUNT 17 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest
### (Individual Claims of Timothy Thigpen against John Doe Officer 27)

407.     Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 17 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 27.

408.     The conduct of JOHN DOE OFFICER 27 in stopping, frisking and searching Plaintiff TIMOTHY THIGPEN on April 15, 2015 was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 17 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 27.

409.     As a direct and proximate result of such acts, JOHN DOE OFFICER 27 deprived THIGPEN of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 17 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 27.

410.   As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**   Officer Laurin makes no answer to the allegations contained in Count 17 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 27.

411.   The acts of JOHN DOE OFFICER 27 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**   Officer Laurin makes no answer to the allegations contained in Count 17 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 27.

**COUNT 18 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest**
**(Individual Claims of Melvin Thompson against Jane Doe Officer 28)**

412.   Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**   Officer Laurin makes no answer to the allegations contained in Count 18 of the Fifth Amended Complaint because said Count is only directed against Jane Doe Officer 28.

413.   The conduct of JANE DOE OFFICER 28 in stopping, frisking and searching Plaintiff MELVIN THOMPSON in August 2013 was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**   Officer Laurin makes no answer to the allegations contained in Count 18 of the Fifth Amended Complaint because said Count is only directed against Jane Doe Officer 28.

414.    As a direct and proximate result of such acts, JANE DOE OFFICER 28 deprived THOMPSON of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 18 of the Fifth Amended Complaint because said Count is only directed against Jane Doe Officer 28.

415.    As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 18 of the Fifth Amended Complaint because said Count is only directed against Jane Doe Officer 28.

416.    The acts of JANE DOE OFFICER 28 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 18 of the Fifth Amended Complaint because said Count is only directed against Jane Doe Officer 28.

### COUNT 19 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest
### (Individual Claims of Steve McAbee against John Doe Officers 29 and 30)

417.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 19 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 29 and 30.

418.    The conduct of JOHN DOE OFFICERS 29 and 30 in stopping, frisking and searching Plaintiff STEVEN McABEE on May 1, 2015 was performed under color of law and

without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:** Officer Laurin makes no answer to the allegations contained in Count 19 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 29 and 30.

419. As a direct and proximate result of such acts, JOHN DOE OFFICERS 29 and 30 deprived McABEE of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:** Officer Laurin makes no answer to the allegations contained in Count 19 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 29 and 30.

420. As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:** Officer Laurin makes no answer to the allegations contained in Count 19 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 29 and 30.

421. The acts of JOHN DOE OFFICERS 29 and 30 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:** Officer Laurin makes no answer to the allegations contained in Count 19 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 29 and 30.

## COUNT 20 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest
**(Individual Claims of Steve McAbee against John Doe Officers 31 and 32)**

422.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 20 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 31 and 32.

423.    The conduct of JOHN DOE OFFICERS 31 and 32 in stopping, frisking and searching Plaintiff STEVEN McABEE on in the spring of 2015 was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 20 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 31 and 32.

424.    As a direct and proximate result of such acts, JOHN DOE OFFICERS 31 and 32 deprived McABEE of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 20 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 31 and 32.

425.    As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 20 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 31 and 32.

426.    The acts of JOHN DOE OFFICERS 31 and 32 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 20 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 31 and 32.

**COUNT 21 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest**
**(Individual Claims of Shantay Johnson against John Doe Officers 33 and 34)**

427.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 21 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 33 and 34.

428.    The conduct of JOHN DOE OFFICERS 33 and 34 in stopping, frisking and searching Plaintiff SHANTAY JOHNSON was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 21 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 33 and 34.

429.    As a direct and proximate result of such acts, JOHN DOE OFFICERS 33 and 34 deprived SHANTAY of her Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 21 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 33 and 34.

430.   As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**   Officer Laurin makes no answer to the allegations contained in Count 21

of the Fifth Amended Complaint because said Count is only directed against John Doe Officers

33 and 34.

431.   The acts of JOHN DOE OFFICERS 33 and 34 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**   Officer Laurin makes no answer to the allegations contained in Count 21

of the Fifth Amended Complaint because said Count is only directed against John Doe Officers

33 and 34.

### COUNT 22 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest
### (Individual Claims of Arthur Moton against John Doe Officer 35)

432.   Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**   Officer Laurin makes no answer to the allegations contained in Count 22

of the Fifth Amended Complaint because said Count is only directed against John Doe Officer

35.

433.   The conduct of JOHN DOE OFFICER 35 in stopping, frisking and searching Plaintiff ARTHUR MOTON in May or June of 2014 was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**   Officer Laurin makes no answer to the allegations contained in Count 22

of the Fifth Amended Complaint because said Count is only directed against John Doe Officer

35.

434.    As a direct and proximate result of such acts, JOHN DOE OFFICER 35 deprived MOTON of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 22 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 35.

435.    As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 22 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 35.

436.    The acts of JOHN DOE OFFICER 35 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 22 of the Fifth Amended Complaint because said Count is only directed against John Doe Officer 35.

**COUNT 23 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest**
**(Individual Claims of Edgar Marshall, Jr. against John Doe Officer 36, the Identity of Whom, Upon Information and Belief, is Officer Roy Mazzanti or Adolfo Garcia)**

437.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 23 of the Fifth Amended Complaint because said Count is only directed against individually named officers.

102

438.    The conduct of JOHN DOE OFFICER 36, the identity of whom, upon information and belief, is Officer MAZZANTI or GARCIA, in stopping, frisking and searching Plaintiff EDGAR MARSHALL, JR. in September 2, 2014 was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 23 of the Fifth Amended Complaint because said Count is only directed against individually named officers.

439.    As a direct and proximate result of such acts, JOHN DOE OFFICER 36, the identity of whom, upon information and belief, is Officer MAZZANTI or GARCIA, deprived MARSHALL of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 23 of the Fifth Amended Complaint because said Count is only directed against individually named officers.

440.    As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 23 of the Fifth Amended Complaint because said Count is only directed against individually named officers.

441.    The acts of JOHN DOE OFFICER 36, the identity of whom, upon information and belief, is Officer MAZZANTI or GARCIA, were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 23 of the Fifth Amended Complaint because said Count is only directed against individually named officers.

**COUNT 24 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest**
**(Individual Claims of Michael Sanders against John Doe Officers 37 and 38)**

442.     Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 24 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 37 and 38.

443.     The conduct of JOHN DOE OFFICERS 37 and 38, in stopping, frisking and searching Plaintiff MICHAEL SANDERS in June 2014 was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 24 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 37 and 38.

444.     As a direct and proximate result of such acts, JOHN DOE OFFICERS 37 and 38 deprived SANDERS of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 24 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 37 and 38.

445.     As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 24 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 37 and 38.

446.     The acts of JOHN DOE OFFICERS 37 and 38 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 24 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 37 and 38.

**COUNT 25 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest**
**(Individual Claims of Michael Sanders against John Doe Officers 37 and 38)**

447.     Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 25 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 37 and 38.

448.     The conduct of JOHN DOE OFFICERS 37 and 38, in stopping, frisking and searching Plaintiff MICHAEL SANDERS in June 2014 was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 25 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 37 and 38.

449.     As a direct and proximate result of such acts, JOHN DOE OFFICERS 37 and 38 deprived SANDERS of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**     Officer Laurin makes no answer to the allegations contained in Count 25 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 37 and 38.

105

450.    As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 25

of the Fifth Amended Complaint because said Count is only directed against John Doe Officers

37 and 38.

451.    The acts of JOHN DOE OFFICERS 37 and 38 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 25

of the Fifth Amended Complaint because said Count is only directed against John Doe Officers

37 and 38.

**COUNT 26 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest**
**(Individual Claims of Rashawn Lindsey against Officers Kris Stipanov and Mario Cruz)**

452.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 26

of the Fifth Amended Complaint because said Count is only directed against Defendants Kris

Stipanov and Mario Cruz.

453.    The conduct of Officers KRIS STIPANOV and MARIO CRUZ in stopping, frisking and searching Plaintiff RASHAWN LINDSEY on April 18, 2015 was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 26

of the Fifth Amended Complaint because said Count is only directed against Defendants Kris

Stipanov and Mario Cruz.

454.    As a direct and proximate result of such acts, Officers KRIS STIPANOV and MARIO CRUZ deprived LINDSEY of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 26 of the Fifth Amended Complaint because said Count is only directed against Defendants Kris Stipanov and Mario Cruz.

455.    As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 26 of the Fifth Amended Complaint because said Count is only directed against Defendants Kris Stipanov and Mario Cruz.

456.    The acts of Officers KRIS STIPANOV and MARIO CRUZ were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 26 of the Fifth Amended Complaint because said Count is only directed against Defendants Kris Stipanov and Mario Cruz.

**COUNT 27 – 42 U.S.C. §1983—Unreasonable Search and Seizure/False Arrest**
**(Individual Claims of Sidney Bell against John Doe Officers 39, 40, 41, 42, 43, and 44)**

457.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 27 of the Fifth Amended Complaint because said Count is only directed against John Doe Officers 39, 40, 41, 42, 43, and 44.

107

458.    The conduct of JOHN DOE OFFICERS 39, 40, 41, 42, 43, and 44, in stopping, frisking and searching Plaintiff SIDNEY BELL in March 2015 was performed under color of law and without any reasonable suspicion of criminality or other constitutionally required grounds. Moreover, this stop and frisk was performed on the basis of racial and/or national origin profiling.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 27

of the Fifth Amended Complaint because said Count is only directed against John Doe Officers

39, 40, 41, 42, 43, and 44.

459.    As a direct and proximate result of such acts, JOHN DOE OFFICERS 39, 40, 41, 42, 43, and 44 deprived BELL of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 27

of the Fifth Amended Complaint because said Count is only directed against John Doe Officers

39, 40, 41, 42, 43, and 44.

460.    As a direct and proximate result of those constitutional abuses, Plaintiff has suffered and will continue to suffer physical, mental and emotional pain and suffering, mental anguish, embarrassment and humiliation.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 27

of the Fifth Amended Complaint because said Count is only directed against John Doe Officers

39, 40, 41, 42, 43, and 44.

461.    The acts of JOHN DOE OFFICERS 39, 40, 41, 42, 43, and 44 were intentional, wanton, malicious, reckless and oppressive, thus entitling Plaintiff to an award of punitive damages.

**ANSWER:**    Officer Laurin makes no answer to the allegations contained in Count 27

of the Fifth Amended Complaint because said Count is only directed against John Doe Officers

39, 40, 41, 42, 43, and 44.

## COUNT 28 – Violation of Rights Under Illinois Law

462.    Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

**ANSWER:**    Officer Laurin reasserts and incorporates by reference his answers to all paragraphs above as though fully set forth herein.


463.    By the actions described above, each and every Defendant, jointly and severally, has committed the following wrongful acts against the named Plaintiffs and other class members, which are tortious under the Constitution and laws of the State of Illinois:

    a.    assault and battery; and

    b.    violation of the right to privacy.

**ANSWER:**    Officer Laurin denies the allegations contained in Paragraph 463 as related to him.  Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 463.


464.    In addition, by the actions described above, JOHN DOE OFFICERS 1 through 44, jointly and severally, have committed the following wrongful acts against Plaintiffs DARNELL SMITH (October 2014 incident) and GREGORY DAVIS (July 2014 and October 2014 incidents), which are tortious under the Constitution and laws of the State of Illinois:

    c.    false arrest; and

    d.    false imprisonment.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 464.


465.    In addition, the City was negligent in their training, supervision and retention of JOHN DOE OFFICERS 1-44, ANTHONY GEMIGNANI, MICHAEL CALLAHAN, NICHOLAS CORDOVA, THOMAS LAURIN, PATRICK KELLY, DANIEL SCHMIT, ROY MAZZANTI, ADOLFO GARCIA, KRIS STIPANOV, and MARIO CRUZ.

**ANSWER:**    Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 465.

466.    The foregoing acts and conduct of Defendants were a direct and proximate cause of injury and damage to the named Plaintiffs and other class members and violated the statutory and common law rights as guaranteed to them by the Constitution and laws of the State of Illinois.

**ANSWER:**    Officer Laurin denies the allegations contained in Paragraph 466 as related to him.  Officer Laurin lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 466.

## AFFIRMATIVE DEFENSES

Officer Laurin states the following affirmative defenses to Plaintiffs' Fifth Amended Complaint:

### First Affirmative Defense

### Qualified Immunity

Plaintiffs' claims against Officer Laurin are barred in whole or in part by qualified immunity because, at all times material to the events alleged in this Fifth Amended Complaint, a reasonably competent officer, objectively viewing the facts and circumstances then confronting Officer Laurin, could have believed that the actions taken by him were objectively reasonable and were within constitutional limits that were clearly established at the time.

### Second Affirmative Defense

### Lack of Standing

Plaintiffs lack standing to request (i) class certification pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3); (ii) a declaratory judgment; and (iii) an order of injunctive relief because they are not under threat of suffering "injury in fact" that is concrete and particularized.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also, Friends of the Earth, Inc. v. Laidlaw*

110

*Env. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000) (plaintiffs must have standing for each form of relief sought).

### Third Affirmative Defense

### <u>Mootness</u>

On or about August 6, 2015, the City of Chicago and the ACLU entered into the Investigatory Stop and Protective Pat Down Settlement Agreement (the "Agreement"). Pursuant to the terms of the Agreement, the City of Chicago revised its policies and procedures relating to investigatory stops and protective pat downs. The implementation of the terms of the Agreement moots Plaintiffs' claims for injunctive and declaratory relief. *See Fed. of Advertising Ind. Reps., Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2007).

### Fourth Affirmative Defense

### <u>Illinois Tort Immunity Act, Section 2-201</u>

As a public employee serving in a position involving the determination of policy or the exercise of discretion, Officer Laurin is not liable for an injury resulting from his act or omission when acting in the exercise of such discretion even though abused. 745 ILCS 10/2-201.

### Fifth Affirmative Defense

### <u>Illinois Tort Immunity Act, Section 2-202</u>

As a public employee, Officer Laurin is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct. 745 ILCS 10/2-202. As to the allegations contained in this Complaint, Officer Laurin did not engage in any act or omission constituting willful and wanton conduct.

### Sixth Affirmative Defense

### <u>Statute of Limitations</u>

111

To the extent any Plaintiff asserts claims beyond the applicable statutes of limitations, that Plaintiff's claims are time-barred.

## JURY DEMAND

Officer Laurin respectfully requests a trial by jury.

Dated: October 31, 2016

Respectfully submitted,

**THOMAS LAURIN, DEFENDANT**

s/ Michael P. Sheehan

By: _____

One of his Attorneys

Allan T. Slagel (ARDC No. 6198470)
Michael P. Sheehan (ARDC No. 6238081)
Jeffrey M. Schieber (ARDC No. 6300779)
Elizabeth E. Babbitt (ARDC No. 6296851)
Richard Y. Hu (ARDC No. 6306199)
TAFT STETTINIUS AND HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Telephone:    (312) 527-4000
Facsimile:    (312) 527-4011
Email:        aslagel@taftlaw.com
              msheehan@taftlaw.com
              jschieber@taftlaw.com
              ebabbitt@taftlaw.com
              rhu@taftlaw.com

17468061.2