## INVESTIGATORY STOP AND PROTECTIVE PAT DOWN
## SETTLEMENT AGREEMENT

WHEREAS, in April 2014, the Chicago Police Department ("CPD") issued revised General Orders and directives to ensure that its policies and practices relating to investigatory stops and protective pat downs comply with applicable law, including the United States and Illinois Constitutions and the Illinois Civil Rights Act ("ICRA"). In connection with that effort, and prior to finalizing the revised General Orders and directives, CPD provided such orders and directives to the American Civil Liberties Union of Illinois ("ACLU") for their review and comment.

WHEREAS, in early 2015, CPD commenced a further review of its policies and practices relating to investigatory stops and protective pat downs. In March 2015, while CPD's review was pending, the ACLU issued a report entitled "Stop and Frisk in Chicago" that raised concerns about CPD's policies and practices. On May 30, 2015, Senate Bill 1304 passed both houses of the Illinois General Assembly. If signed by the Governor, Senate Bill 1304 will impose new documentation requirements relating to investigatory stops and/or protective pat downs.

WHEREAS, pursuant to CPD's continuing evaluation of its policies and practices relating to investigatory stops and protective pat downs, and in response to the ACLU report and Senate Bill 1304, CPD is in the process of further revising its policies and practices. CPD intends to have the revised policies and practices finalized and implemented on or before December 31, 2015, and to complete its training of its officers and supervisors with respect to the revised policies and practices on or before March 1, 2016.

WHEREAS, CPD believes that its policies and practices relating to investigatory stops and protective pat downs have been and will continue to be fully compliant with all applicable laws. Nevertheless, the ACLU has raised concerns about CPD's policies and practices and has informed the City of Chicago of its intention to file a lawsuit challenging them.

WHEREAS, to avoid the burden, inconvenience, and expense of litigation, the City of

1

Chicago, CPD, and the ACLU ("the parties") have agreed to work together to ensure and validate that CPD's policies and practices relating to investigatory stops and protective pat downs fully comply with applicable law.

Accordingly, the parties agree as follows:

## I.    Data Collection

1.    CPD will document all investigatory stops and all protective pat downs, including those that lead to an arrest, an Administrative Notice of Violation ("ANOV"), or other enforcement action, into an electronic digitized database.  CPD's current database documents all investigatory stops and protective pat downs that do not lead to either an arrest or an ANOV.  As soon as reasonably possible thereafter, the database will be modified to also include investigatory stops and protective pat downs that lead to an arrest or an ANOV.  For each investigatory stop and/or protective pat down, the electronic digitized database shall include:

a)    the name and badge number of the officers who conducted the investigatory stop and/or protective pat down;

b)    the race/ethnicity of the person stopped, selected from the following list: American Indian or Alaska Native, Asian, Black or African American, Hispanic or Latino, Native Hawaiian or Other Pacific Islander, or White;

c)    the gender of the person stopped;

d)    all of the reasons for the stop;

e)    the location of the stop, including the address, beat, and district;

f)    the date and time of the stop;

g)    whether or not a protective pat down was conducted of the person, and if so, all of the reasons that led to the protective pat down and whether it was with consent or by other means;

h)    whether or not contraband was found during the protective pat down, and if so,

2

the type and amount of contraband seized;

      i)      whether or not a search beyond a protective pat down was conducted of the person or his or her effects, and if so, all the reasons that led to the search, and whether it was with consent or by other means;

      j)      whether or not contraband was found during any search beyond a protective pat down, and if so, the type and amount of the contraband seized;

      k)      the disposition of the stop, such as a warning, an ANOV, or an arrest; and

      l)      if an enforcement action was taken (i.e., an arrest or ANOV), a record of the violations, offenses, or crimes alleged or charged.

## II.    Training and Supervision

1.      CPD will provide training for officers and supervisors directed at ensuring that investigatory stops are conducted only where there is reasonable suspicion of criminal conduct and that protective pat downs are performed only where there is reasonable suspicion that the person stopped is armed and dangerous. Further, CPD shall train officers with respect to the electronic digitized database and their responsibilities to record all the relevant information for each investigatory stop and protective pat down. Where appropriate, new or revised General Orders and/or other directives will be issued by the CPD. CPD expects to issue such new or revised General Orders and/or other directives by December 31, 2015, and to complete the training of its officers and supervisors with respect to such General Orders and/or other directives, by March 1, 2016.

2.      CPD will implement training policies and practices to ensure that investigatory stops and protective pat downs are conducted consistent with the following guidance provided by the U.S. Department of Justice:

> In making routine or spontaneous law enforcement decisions, such as ordinary sidewalk and traffic stops, Chicago Police Department officers may not use race, ethnicity, national origin, religion, gender, gender identity, sexual orientation, marital status, parental status, or military discharge status, except that officers may rely on the listed characteristics in a specific suspect description.

3. By January 1, 2016, CPD shall establish and enforce policies providing for continuous district-level supervisory review and quarterly or semi-annual department-level audits of CPD's investigatory stop and protective pat down practices. The CPD shall provide these policies and procedures to the Consultant (identified in Section V.1, below) and the ACLU for their review and comment, prior to their finalization. These policies and procedures shall include:

a) Continuous review by police district supervisors of all individual Investigatory Stop Reports to determine whether they state legal grounds for the investigatory stop and/or any protective pat down.

b) Quarterly or semi-annual audits by CPD headquarters staff of CPD investigatory stop and protective pat down practices. These audits shall include examination of: (i) the narrative sections of a statistically representative sample of individual Investigatory Stop Reports to determine whether they state legal grounds for the investigatory stop and/or protective pat down; (ii) records of supervisory corrections or rejections of Investigatory Stop Reports to identify officers who repeatedly fail to document investigatory stops and/or protective pat downs, or who conduct investigatory stops and/or protective pat downs without the requisite reasonable suspicion; and (iii) CPD documentation of civilian and internal complaints relating to investigatory stops and/or protective pat downs.

c) The establishment of re-training, enhanced supervision, or discipline of officers who engage in unlawful investigatory stops and/or protective pat downs or who violate CPD policies or procedures governing these practices. There shall be written documentation of all such re-training, enhanced supervision, or discipline.

### III. Release of Data and Documents

4

1.      Within 10 days of the execution of this agreement, all of the digitized information in CPD's electronic digitized database, including but not limited to the enumerated fields in Section I.1, shall be provided to the Consultant and the ACLU.   Thereafter, the data shall be provided to the Consultant and the ACLU on a monthly basis on the first of the month.   This information, and the information described in paragraphs 4 through 6 below, shall be kept confidential by the Consultant, the ACLU, and the persons identified in Section III.3 on an "attorneys eyes only" basis and shall not be disclosed by the Consultant, the ACLU, or the persons identified in Section III.3 for any purpose whatsoever other than to the extent the information is included in the Consultant's Reports and Recommendations described in Section V.2(f) below.

2.      This agreement does not in any way limit the ACLU's rights under the Illinois Freedom of Information Act (FOIA).   Moreover, if the ACLU receives information under this agreement that the ACLU believes it would be entitled to obtain under FOIA, the parties will work in good faith to seek agreement about whether that information would in fact be subject to release under FOIA.   If the parties reach agreement, the confidentiality provision set forth in III.1 shall not apply.   Any dispute about whether information disclosed pursuant to this agreement would be subject to release under FOIA shall be resolved by the Consultant.

3.      Under the "attorneys eyes only" restrictions, the Consultant and ACLU may only allow the following categories of people to review the information: (1) counsel for the ACLU and employees of counsel who have responsibility for the execution of this agreement; (2) contractors specifically engaged for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents; (3) consultants or experts provided for in Section V.3 (the Consultant's experts); (4) consultants or experts employed by the ACLU to assist in the execution of this agreement, and (5) other persons only by written consent of the City.   Prior to sharing the information with any outside consultants, experts, or others, the ACLU and/or the Consultant will obtain from that individual a signed agreement to abide by the confidentiality provisions set forth herein.   The

5

ACLU and/or the Consultant will promptly provide the City with a copy of all such agreements.

4.      CPD shall provide the Consultant and the ACLU all current and future training, policy materials, and supervisory materials described in Section II.

5.      CPD shall provide the Consultant and the ACLU the quarterly or semi-annual audits conducted by CPD headquarters staff of CPD's investigatory stop and protective pat down practices described in Section II.

6.      CPD shall provide the Consultant and the ACLU with all additional documents necessary to conduct an independent analysis and review of CPD's investigatory stop and protective pat down practices.

7.      Absent the permission of the subject of the stop, the Consultant will redact all personal identifying information about the subject of stops from the Consultant's Reports and Recommendations. The redacted information shall be kept confidential consistent with Section III.1, above.

## IV.      Compliance with the United States and Illinois Constitutions and ICRA

1.      CPD shall conduct investigatory stops and protective pat downs in compliance with the United States Constitution, the Illinois Constitution, and ICRA.

2.      CPD shall be in substantial compliance with this agreement if any violations of its requirements are neither systemic nor serious. If a serious violation occurs, CPD shall be in substantial compliance if it promptly identifies the violation and develops and implements a timely and appropriate remedy that results in compliance.

3.      After reviewing the data for the six-month period commencing January 1, 2016 and ending June 30, 2016, the ACLU and the City will work together to seek agreement on standards for substantial compliance with ICRA.   If the ACLU and the City cannot agree, the Consultant will review the data and determine such standards after considering the respective views and submissions of the parties.

## V.      The Consultant

6

1.     The Parties have jointly selected retired Judge Arlander Keys to serve as the Consultant of this agreement.

2.     The duties of the Consultant are to:

a)     Review and validate CPD's policies, practices, and orders regarding investigatory stops and protective pat downs, including but not limited to, CPD's training regarding investigatory stops and protective pat downs, CPD's method of supervisory review of investigatory stops and protective pat downs, and CPD's method of auditing investigatory stops and protective pat downs.

b)     Recommend to the parties changes to CPD's policies, practices, and orders regarding investigatory stops and protective pat downs that are reasonable and necessary to comply with the law, including the United States Constitution, the Illinois Constitution, and ICRA. The Consultant shall consult with the parties before making such recommendations.

c)     Review any other documents the Consultant determines are necessary to assess CPD's investigatory stops and protective pat downs, including but not limited to civilian complaints and disciplinary files regarding investigatory stops and protective pat downs (subject to any limitations contained in federal and state law and collective bargaining agreements).

d)     On a semi-annual basis, commencing with the six month period starting January 1, 2016 and ending June 30, 2016, identify to the parties and review a statistically representative sample of Investigatory Stop Reports and assess whether the narratives state sufficient facts to establish the requisite reasonable suspicion for the investigatory stop and for any protective pat down.

e)     On a semi-annual basis, commencing with the six month period starting January 1, 2016 and ending June 30, 2016, review aggregate Investigatory Stop Report data to determine whether the standards for substantial compliance set forth in Section IV.2 have been met.

f)     On a semi-annual basis, commencing with the six month period starting January 1, 2016 and ending June 30, 2016, provide to the parties a written Report and Recommendations based on his or her review of the above materials. These Reports and Recommendations will include an assessment

7

of whether the CPD is in substantial compliance with this agreement. The Reports and Recommendations will also identify any further practices, policies and other measures that the Consultant recommends are needed to ensure that CPD investigatory stop and protective pat down practices and policies are in compliance with the United States Constitution, the Illinois Constitution, ICRA, and this agreement. The parties will have 30 days to serve each other and the Consultant with objections to each Report and Recommendations. The Consultant will then have 30 days to make any revisions to the Report and Recommendations before making it public.

3.      The Consultant may seek the advice and assistance of police practices and statistical experts in formulating the Reports and Recommendations. The City shall compensate the Consultant and any experts he or she shall retain for their professional services and reasonable expenses. Any experts utilized by the Consultant will be subject to the confidentiality provisions set forth in Section III.1.

**VI.      Other Terms**

1.      The parties acknowledge that this agreement is not an admission of liability on the part of the City and/or the City's future, current, or former officers, agents, and employees, and shall not serve as evidence of the validity or invalidity of any claims that have been or might be brought in litigation against the City and/or the City's future, current, or former officers, agents, and employees.

2.      In consideration of this agreement, the ACLU agrees not to either file as a party or join as a party any lawsuit challenging CPD's policies or practices relating to investigatory stops and/or protective pat downs while this agreement remains in effect.

3.      This Agreement shall remain in effect until June 30, 2017, upon a finding by the Consultant of substantial compliance as defined in Sections IV.2 and .3 for one year preceding that date. If the Consultant finds at that time that CPD has not been in substantial compliance, this agreement shall be extended until the Consultant finds that CPD has been in substantial compliance with this agreement for one year.   Any party may terminate this agreement at any time.

8

4.      Any dispute as to the meaning or interpretation of this agreement will be resolved first by the Consultant.   If, after an interpretation by the Consultant, either party wishes, they also may seek interpretation in the Circuit Court of Cook County.

5.      This agreement contains the entire agreement between the parties and the parties mutually agree that this agreement shall be binding upon and inure to the benefit of the parties, due consideration having been given and may be enforced like any other contract.   The parties agree that in the event of a breach of this agreement, there will be no adequate remedy at law and that this agreement may be enforced through a suit for specific performance.

6.      The person signing the agreement represents and warrants that he or she is authorized to sign on behalf of the party for which he or she is signing and that the agreement as signed is binding on that party.

_____      _____

Harvey Grossman      Date
Legal Director
The American Civil Liberties Union of Illinois
180 North Michigan Avenue, Suite 2300
Chicago, Illinois   60601

_____      _____

Garry F. McCarthy      Date
Superintendent
Chicago Police Department
3510 South Michigan Avenue
Chicago, Illinois   60653

_____      _____

Stephen R. Patton      Date
Corporation Counsel
City of Chicago, Department of Law
121 North LaSalle Street, Suite 600
Chicago, Illinois   60602

9