**Temporary Stay of the Review of the Statistically Representative Sample of ISRs (Section V(d-f) of the Agreement)**

1.  The Consultant's report on his review of 2017 Chicago Police Department ("CPD" or "Department") Investigatory Stop Report ("ISR") data identifies concerns with data collection and supervision which he believed made an accurate assessment of Fourth amendment compliance, as required by the Agreement, impracticable. Certain data and supervision processes related to the Consultant's concerns have not changed since 2017. The parties agree that the Consultant will not review a statistically significant sample of ISRs for 2018 and 2019 for Fourth Amendment compliance. Nothing in this agreement constitutes an admission by the City or CPD of noncompliance with the Investigatory Stop and Protective Pat Down Settlement Agreement dated August 6, 2015 ("2015 Agreement"), nor any agreement on their part with the specific findings of the Consultant. However, in the interest of accomplishing the goals of the Agreement, the parties have agreed to the following actions.

2.  The parties agree to place a stay on the review of a statistically significant sample of ISRs (Section V(d-f) of the Agreement) while the Department undertakes review of and assesses any changes to its systems of data collection, supervision, and auditing (collectively, the "investigatory stop system"), as described in Appendix A. This stay does not otherwise alter the terms of the 2015 Agreement.

3.  During this stay, the role of the Consultant will be limited to assisting the CPD in identifying improvements to the investigatory stop system, as described in Appendix A, and monitoring the implementation of the Department's implementation plan, as described below and in Appendix A.

4.  As described in Appendix A, by January 1, 2020, the Department will identify improvements to the investigatory stop system through a process of research, focus groups, and consultation with the ACLU, the Consultant, and the Consultant's independent police practices expert.

5.  The polices practices expert will provide consultation with sufficient time for the Department to create the implementation plan described below and in Appendix A. If the police practices expert raises questions or concerns about the investigatory stop system, or makes recommendations to improve the system, the Department will share information with the expert in response and/or incorporate the expert's recommended changes into the implementation plan.

6.  By March 1, 2020, the Department will develop a project management plan, in consultation with the ACLU, the Consultant, and the Consultant's police practices expert, to implement improvements they have jointly identified ("project management plan" or "implementation plan"), to be completed by June 1, 2020.

1

7. From September 16, 2019 through June 1, 2020, the City and Department will have bi-weekly calls with the Consultant, the police practices expert, and the ACLU to provide updates on the progress of the items addressed above and in Appendix A.

8. By June 15, 2020, the Consultant will publish a public report describing the progress of the items discussed above and in Appendix A and CPD's implementation of the project management plan.

9. The Consultant's review of a statistically significant sample of ISRs as described in Section V(d-f) will resume with a review of the data collected between June 1, 2020 and December 31, 2020. The parties and Consultant will confer and jointly determine an appropriate and timely date on which the Consultant's reporting pursuant to the 2015 Agreement will resume.

**Fourth Amendment Review of 2018-2019 Data**

10. The Consultant's statistical expert shall receive and conduct a preliminary review of the data for 2018 and 2019. The expert will advise on whether and, if applicable, when it is appropriate to publish limited statistical analyses for the purpose of assessing Fourth Amendment compliance and disparate impact. When publishing the report described in Par. 8 above, the Consultant may include these simple statistical analyses.

**Prospective Fourth Amendment Review**

11. By July 1, 2020, the City, ACLU, and Consultant will confer about the Consultant's methodology for conducting Fourth Amendment compliance assessments. If the Department continues the use of multi-version ISRs, the methodology will include a review of the use of multi-version ISRs, including supervisors' documentation of rejections and corrections.

12. If the Department continues the use of multi-version ISRs, an expert will review and provide advice on which ISR versions the Consultant should review and under what circumstances (e.g., whether the Consultant should review only the first version or final versions of the ISRs) in assessing Fourth Amendment compliance within a statistically significant sample of ISRs. If the expert advises that the Consultant should review only the first version, the parties do not object to that review.

13. If the Department continues the use of multi-version ISRs, the Department will create an explanation of the appropriate employment and purposes of the multi-version forms and make it available to officers, supervisors, auditors, and others who receive or are entitled to receive the forms.

**Disparate Impact Compliance Methodology**

14. For the purposes of negotiating agreement under Section IV.3 of the Agreement, the City agrees that the Consultant may (1) assume, solely for purposes of determining CPD's

legal compliance under the Agreement, that a prima facie showing under ICRA based on disparate impact on the basis of race has been satisfied and (2) forego that analysis. This agreement to address and discuss disparate impact does not constitute an admission of any fault or liability whatsoever on the part of the City or the CPD and does not extend outside of determining a compliance methodology for this Agreement; this agreement shall not be interpreted as an admission of any fault or liability by the City or the CPD.

15. Consistent with Section III of the 2015 Agreement, the City agrees to furnish the ACLU and the Consultant's policing practices expert with all CPD policies necessary for ICRA analysis, and any information required to devise any remedies under ICRA analysis. Such information includes, but is not limited to, access to all relevant data and, for the policing practices expert, interviews of members of the Department conducted and selected by the expert.

16. Consistent with Section V of the 2015 Agreement, if applicable, the Consultant will recommend to CPD any remedies the Consultant identifies pursuant to the ICRA analysis.

Karen Sheley
Director, Police Practices Project
ACLU of Illinois
150 North Michigan Avenue, Suite 600
Chicago, Illinois 60601

9/26/2019
Date

Mark A. Flessner
Corporation Counsel
City of Chicago Department of Law
121 N. LaSalle, Suite 600
Chicago, IL 60602

9/27/19
Date

3

**Appendix A:**

**Investigatory Stop System Revision Plan**

1.  The City and CPD seek to promote accuracy and transparency when forms are completed and reviewed. Thus, by January 1, 2020, CPD, in consultation with the Consultant, the Consultant's policing expert and the ACLU, CPD will:

    a.  determine what adjustments CPD, the Consultant, the Consultant's policing expert, and the ACLU jointly agree are needed to the ISR application (i.e., the electronic forms that both officers and supervisors fill out) to promote accurate reporting; and

    b.  review and determine appropriate revisions to the ISR special order and any related guidance documents to provide clarity and consistency with the revised investigatory stop system.

2.  In so doing, CPD will conduct research, including but not limited to conducting focus groups with CPD members and reviewing best practices in other jurisdictions, to identify improvements in the Department's investigatory stop system that promote the Department's goals of accurate and transparent reporting.

3.  Currently, all CPD officers receive training on the investigatory stop system and Fourth Amendment, the curriculum for which was reviewed and approved by the ACLU and Consultant. CPD also provides targeted remediation training based on the Department's review of ISRs. By January 1, 2020, CPD will review its training methods and frequency and will determine, with assistance from the police practices expert, whether additional training is necessary, including whether additional targeted remediation training is appropriate for certain members.

4.  To improve the accountability of CPD's auditing of ISRs and respond to the Consultant's report on this issue, CPD's Integrity Unit has been moved under the Department's new Auditing Unit, which now directly supervises the ISR auditing process. Further, by January 1, 2020, CPD will, in consultation with the Consultant, policing expert and the ACLU:

    a.  summarize and report on the work and findings of the Integrity Unit from 2016-2019;

1

b. determine appropriate adjustments to the specific methodologies of the Department's ISR audits conducted to provide transparency and consistency, including district-level executive audits, including whether review of body-worn camera footage would be helpful or appropriate;

c. develop criteria for a standardized audit template, including for district-level executive audits;

d. review and determine any appropriate revisions to the Department's Standard Operating Procedures (SOP) for conducting ISR audits;

e. determine whether additional or revised training is appropriate for the Department's ISR reviewers and auditors.

4. By March 1, 2020, CPD will develop a plan to implement all agreed-upon processes.